438 P.2d 403

**Allen B. BICKART and Sandra G. Bickart,
Appellants,**

v.

**GREATER ARIZONA SAVINGS AND LOAN
ASSOCIATION, an Arizona corporation, Appellee.**

No. 9133–PR.

Supreme Court of Arizona.

In Banc.

March 7, 1968.

Kanne & Bickart, Johnson & Shaw, by J. P. Shaw, Phoenix, for appellants.

Neal T. Roberts, Phoenix, for appellee.

McFARLAND, Chief Justice:

This case is before us on a petition for review of a decision of the Court of Appeals, 6 Ariz.App. 174, 430 P.2d 928, in which it reversed in part, and affirmed in part, a superior court judgment in favor of plaintiff. Decision of the Court of Appeals vacated, judgment of the superior court reversed, and case remanded for trial.

Allen B. Bickart and his wife, defendants-appellants, hereinafter referred to as Bickart, executed a note and mortgage to Greater Arizona Savings and Loan Association, plaintiff-appellee, hereinafter referred to as plaintiff. The mortgage, dated September 10, 1962, covered a Phoenix house in which Goettl Bros. had installed an air-conditioning system for which they had not been paid. On January 8, 1963, a mechanics' lien was filed by Goettl. Bickart defaulted on his payments, and subsequently entered into an oral agreement with plaintiff on March 5, 1963, which provided that Bickart would furnish to plaintiff a deed to the mortgaged property, in lieu of foreclosure, "without condition or reservation," in return for which plaintiff would release Bickart from liability on the note. On March 5, 1963, Bickart executed and delivered a deed to plaintiff, which "was not refused." On March 15, 1963, Bickart sent Goettl a release of mechanics' lien for signature. Goettl entered upon the mortgaged premises without either party's permission, and repossessed the compressor. He then signed the lien release and delivered it to plaintiff on the 30th day of March 1963. On or about April 14, 1963, after receiving Bickart's deed, plaintiff advised Bickart that it would not accept the deed because the value of the property had been lessened by the removal of the compressor. Plaintiff started its foreclosure action on August 19, 1963.

Bickart answered, and, under Rule 14, Rules of Civil Proc., 16 A R.S., brought in

Goettl as a third-party defendant. Bickart's complaint against Goettl alleged that the lien was filed too late to be valid under the mechanics' lien statute, and was also invalid because its foreclosure was barred by lapse of time. After Goettl's answer was filed, plaintiff moved for summary judgment against Bickart, which was granted, including attorney's fees of $3,500.

We shall confine our opinion to a discussion of the points raised by plaintiff-appellee, which it expresses as follows:

1. Under the Negotiable Instruments Law, must an accord and satisfaction to discharge a promissory note be in writing or the note surrendered?

The Negotiable Instruments Law of Arizona in effect at all times material hereto included A.R.S. § 44–519, which provided:

"A negotiable instrument is discharged:

\* \* \* \* \* \*

"4. By any \* \* \* act which will discharge a simple contract for the payment of money; \* \* \*"

and A.R.S. § 44–522, which provided:

"The holder may expressly renounce his rights \* \* \* renunciation \* \* \* discharges the instrument. \* \* \* A renunciation must be in writing, unless the instrument is delivered up \* \* \*"

From these two provisions, plaintiff argues that the agreement in the instant case is not binding because it was not in writing and the note was not delivered up.

§ 44–522 referred only to renunciation (i. e., a release without consideration), and had no bearing on § 44–519 which included discharge by accord and satisfaction. This is the better view, although there is some conflict in the authorities. Johnston & Larimer Dry Goods Co. v. Helf, 178 Okl. 527, 63 P.2d 681, 108 A.L.R. 650; Jones v. Wettlin, 39 Wyo. 331, 271 P. 217, 69 A.L.R. 840; Pacific Employees' Ins. Co. v. Brannan, 150 Tex. 441, 242 S.W.2d 185.

Apart from the above cases supporting the view we have expressed, we have considerable doubts whether the Negotiable Instruments Law is applicable at all to a controversy between the original payee and the original maker of a note. The Negotiable Instruments Law is a codification of the decisions and customs of the Law Merchant, dating back to the days of William the Conqueror. These customs and cases evolved for the purpose of making it possible for commercial paper to circulate freely and without question, when in proper form and in the hands of innocent third parties. Zier v. Eastern Acceptance Corp. (D.C., Mun.App.), 61 A.2d 106. Nearly all of the provisions of the N.I.L. are designed to apply to instruments that have passed out of the hands of the original payee. For this reason, even though a contract happens to be in the form of a negotiable instrument, it does not necessarily follow that, before it is transferred, it is governed by the provisions of the N.I.L.

As between the original parties there is no difference between a note payable to X and one payable to the order of X; the difference appears only after the note comes into the hands of a holder in due course, at which time the latter note, being negotiable, gives the holder a right of action free of certain defenses against X, while the former, being nonnegotiable, does not.

We may, therefore, regard the note in the instant case, as a simple contract for the payment of money, and—even though it be in writing—it may be varied or discharged by a new oral contract. 6 Williston on Contracts (Rev.Ed.) Section 1828. See also 2 Restatement of Contracts, Section 417.

We hold, therefore, that under both contract law and the N.I.L., an oral accord and satisfaction will discharge a simple contract for the payment of money.

2. Was the issue of accord and satisfaction Res Judicata?

On this second question, plaintiff attempts to argue that in a prior injunction suit a trial court found that the parties had not made any agreement to release Bickart. We have not considered this argument be-

cause plaintiff in the same brief in which this argument appears, unequivocally admits, for the purpose of the motion for summary judgment, that the agreement was made.

3. If there was an agreement to effect an accord and satisfaction, did defendant, as a matter of law, breach the agreement?

Plaintiff contends that defendant breached the accord by delivering a deed which did not conform to the agreement to deliver a deed "without condition or reservation." The deed states that Allen B. and Sandra G. Bickart "do hereby convey" to plaintiff the property in question "subject to current taxes and other assessments, reservations and patents, and all easements, rights of way, encumbrances, liens, covenants, conditions, restrictions, and obligations and liabilities as may appear of record."

Plaintiff cites A.R.S. § 33–435 to support its position. It provides that where the words "grant" or "convey" are used in a deed, there are certain implied warranties *in the absence of express terms* indicating a contrary intent. Express terms are present in the deed in question, so the statute does not apply.

■ What is the meaning of the words "without condition or reservation"? Plaintiff construes the phrase to apply to the estate to be conveyed by the deed. Bickart claims that the phrase does not describe the estate to be conveyed but is meant to indicate that no conditions were to be placed on plaintiff other than the condition that it would release Bickart from his note, upon receipt of the deed. In such cases the rule is that before evidence can be taken to show the meaning of the phrase, it must first be determined by the court to be so ambiguous or uncertain that its meaning cannot be determined from its own language. Sass v. Hank, 108 Cal.App.2d 207, 238 P.2d 652.

■ We do not believe that such is the case here. We doubt whether reasonable men anywhere would subscribe to Bickart's interpretation. We believe that it is reasonably clear that the phrase in question was intended to refer to the estate conveyed. However, we believe, and therefore hold, that "without condition or reservation" refers to "merchantable title"—i. e., one customarily acceptable, which is readily accepted by buyers. This is the same sort of title that would be demanded by plaintiff before it would loan funds secured by a real-estate mortgage. Thus, if buyers generally, for example, would accept a title subject to rights of way for power lines of the local public utility, and subject to easements of certain corporations for irrigation ditches, these encumbrances would not make the title unmerchantable.

When applied to a deed, the words "without reservation" and "without condition" have the same meaning. We therefore treat them as synonymous. In our opinion, the phrase meant that Bickart would convey the same title to plaintiff that the record showed he held when the loan was made. If there were minor defects which were too insignificant to cause plaintiff to reject the security and refuse the loan, plaintiff will not be heard to say that the title now is not good enough.

With regard to current taxes, there is no evidence that plaintiff made payment of them a part of the accord. Plaintiff does not claim that it demanded, for release of Bickart's note, the payment of current taxes in addition to the deed; the record indicates that the accord consisted only of the deed in exchange for the release of liability on the note.

■ There remains the question of the mechanic's lien. There is no doubt that Goettl's mechanic's lien was on record when the accord was made, and if Bickart tendered a deed subject to that lien, with nothing more, he could not claim performance of his part of the accord. However, the record shows that shortly after he delivered the deed on March 5, 1963, he also sent a release of lien to Goettl with a request that the latter execute it and send it to plaintiff. This was done by Goettl before the end of

**170**

March, and plaintiff has not denied receiving it. We consider that a deed, subject to liens of record, delivered to the grantee along with a release of the only lien of record, gives the grantee merchantable title in Bickart's motion for rehearing before the Court of Appeals, he states that *the Goettl lien was the only item affecting the title* (except for plaintiff's mortgage). Whether or not this statement is true is a matter of evidence. In the present state of the record, the only lien of record appears to be Goettl's, and since a release of that lien was provided by Bickart there clearly was an accord and satisfaction.

4. Did defendant fail to raise a fact issue on attorney's fees?

Plaintiff evidently did not think much of this issue, as it did not include any argument on it in its brief. In any event, we held, in Elson Development Co. v. Ariz. Savings and Loan Assn., 99 Ariz. 217, 407 P.2d 930, that where an action is brought upon a written contract which provides for *reasonable attorney's fees*, it is error for the court to fix the amount of such fees without proof of what is a *reasonable fee*.

When this case comes on for trial, the evidence will show whether any significant liens or restrictions existed against the property, other than those which appeared of record at the time the mortgage was given. At the trial evidence will also have to be taken on the issue of whether there actually was an accord. (Plaintiff in its brief states that "This fact was steadfastly denied, but for the purpose of the summary judgment, was admitted.") These matters are disputed issues of fact and should be resolved by a trial rather than by summary judgment.

Judgment of the superior court reversed, and case remanded for trial. Decision of the Court of Appeals vacated.

UDALL, V. C. J., and STRUCKMEYER, BERNSTEIN, and LOCKWOOD, JJ., concur.