462 P.2d 853

**Dom MARTINO, Deceased, by Gertrude Martino, Administratrix of his estate and Gertrude Martino, individually, Appellants,**

**v.**

**Neil D. FRUMKIN, Appellee.**

**No. 1 CA–CIV 923.**

Court of Appeals of Arizona, Division 1.

Department A.

Dec. 11, 1969.

Rehearing Denied Jan. 9, 1970.

Review Denied Feb. 10, 1970.

·W. Francis Wilson, Phoenix, for appellants.

Langerman, Begam & Lewis, by William B. Revis, Phoenix, for appellee.

STEVENS, Judge.

This appeal by Gertrude Martino individually and as the administratrix of her deceased husband, Dom Martino, questions the propriety of the judgment of the trial court, sitting without a jury. We are asked to decide whether their affirmative defense of payment was sustained by the evidence received during the trial of the suit brought by Neil D. Frumkin on the Martino promissory note dated 3 January 1964. The trial was held on 24 October 1967, and we state the evidence in the light most favorable to sustaining the judgment in favor of Frumkin.

Prior to the date the promissory note was executed by the Martinos, they sold two lots they owned to the Normans, who are not parties to this litigation. The lots were sold on a land contract which was held by a local title company in a collection escrow. The payments thereon were $60 a month including principal and interest.

Thereafter the Martinos, who were seeking property upon which they could build an apartment complex, agreed to buy three adjoining lots from Frumkin which he owned as his sole and separate property (Lots 34, 35 and 36). The deal was consummated on 3 January 1964 with an agreed price for each lot set at $18,500.

Because they were unable to finance the purchase of all of the lots simultaneously, the Martinos executed option agreements on Lots 35 and 36 (apparently ·identical in terms), which were thereafter kept alive by monthly payments for approximately one year. The Martinos did not exercise the options and they were terminated in early 1965. On Lot 34, the Martinos assumed a $10,000 mortgage, paid $500 earnest money, paid $4,000 on the close of escrow, and executed the $4,000 promissory note which was not paid on its due date of 2 April 1964. Frumkin subsequently

brought suit, secured judgment and this appeal followed.

The following "Agreement", exclusive of signatures and property description, was also executed by the Martinos and Frumkin on 3 January 1964:

"In consideration of TEN DOLLARS ($10.00) and other good and valuable consideration, we, DOM MARTINO and GERTRUDE MARTINO, individually and as husband and wife, hereinafter referred to collectively as MARTINOS, hereby assign to NEIL D. FRUMKIN, husband of Sally Ann Frumkin, as his sole and separate property, and hereinafter referred to as FRUMKIN, all our right, title and interest in and to the sellers' interest in that certain Contract of Sale recorded in Docket 2856 at page 265 et seq., of the records of the Maricopa County Recorder's Office, wherein Dom Martino and Gertrude Martino appear as sellers and James W. Norman, husband of Marie Lou Norman, dealing with his sole and separate property, appears as buyer. Said contract being for the purchase of property and improvements thereon located at 6028 South 12th Street, Phoenix, Arizona

* * *.

"MARTINOS warrant that the principal sum now due them on said contract exceeds $4,000.00 and that the principal balance is payable $60.00 or more per month including interest at the rate of 6% per annum, through the Arizona Guaranty & Trust Company, Phoenix, Arizona.

"On even date herewith, MARTINOS have executed a promissory note in favor of FRUMKIN. If said promissory note is paid when due according to its terms, FRUMKIN will immediately reassign the contract referred to above to MARTINOS.

"It is expressly understood that this assignment is not accepted nor is it intended as payment for said note, or for payment of any sums now or hereafter owing by MARTINOS, or either of them, to FRUMKIN, but merely as additional security, and as a material inducement to FRUMKIN to extend credit to MARTINOS in connection with various transactions. In case of default by MARTINOS in the note aforesaid, FRUMKIN may pursue all remedies he deems appropriate to enforce said note according to its terms, while at the same time holding the contract herein assigned and collecting the payments thereunder, and retaining said payments as additional consideration for the signing of this instrument and not as a penalty or forfeiture, and FRUMKIN shall be obligated to reassign the contract referred to above to MARTINOS only upon the payment in full of all sums due FRUMKIN pursuant to the terms of the note aforesaid.

"DATED this 3 day of January, 1964."

Of this "Agreement", Frumkin testified that he accepted it in lieu of a second mortgage on Lot 34 at Martino's request, Martino stating that a second lien on the already encumbered property might impair his prospects of securing financing for the contemplated apartment complex.

■■ Because the primary duty of the courts is to determine and give effect to the intention of the parties by placing themselves in the position of the contracting parties and by reading the instrument in light of the circumstances surrounding them at the time it was made, General Accident Fire & Life Assurance Corporation v. Traders Furniture Co., 1 Ariz.App. 203, 401 P.2d 157 (1965), we hold that when the parties executed the "Agreement" contemporaneous with the execution of the note, it was their intention to create a mortgage within the purview of A.R.S. § 33–702, which provides in part:

"Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act, is a mortgage * * *. The fact that a transfer was made subject to defeasance on a condition, may, for the purpose of showing that the transfer is a

mortgage, be proved * * *, notwithstanding that the fact does not appear by the terms of the instrument."

Here, not only does the "Agreement" state that the parties "expressly understood" that the transfer was to act "merely as additional *security*, and as a material inducement to FRUMKIN to extend *credit* to MARTINOS in connection with various transactions" (emphasis supplied), but the fact that the transfer was made subject to defeasance on a condition appears by the terms of the instrument:

> "If said promissory note is paid when due according to its terms, FRUMKIN will immediately reassign the contract referred to above to MARTINOS."

Lastly, we note that paragraph four of the "Agreement" specifically precludes a forfeiture. In Merryweather v. Pendleton, 91 Ariz. 334, 372 P.2d 335 (1962) our Supreme Court said the following of agreements which ostensibly operate as absolute conveyances:

> "In cases of doubt the courts tend to hold the agreement to be a mortgage since this protects all parties and prevents forfeiture of the pledged property (cases cited)." 91 Ariz. at 342, 372 P.2d at 341.

We so hold in this case. A mortgage to secure the Martino promissory note was created by the parties when they executed the "Agreement" on 3 January 1964.

■ After the note became due and payment was not made by the Martinos, Frumkin testified to the following conversation with Martino:

> "Q. Now, I will ask you if * * * you had a conversation with Dom Martino * * * after the note was due, in which you said, substantially: Dom, your Note is due; and Dom said to you: I am sorry, Neil, I haven't gotten my interim money yet, so I can't pay it: and then you said: Well, I will take the south Phoenix property; and Martino said: Well, I guess that is the only thing you can do. Do you recall any such conversation as that, approximately?

> "A. Yes, sir."

Similar testimony was given by Martino when he was deposed after the suit was brought on the promissory note, but prior to his death:

> "Q. Then the only occasion—and correct me, if this is an incorrect statement—The only occasion upon which you have been told by Mr. Frumkin or anyone in his behalf, according to the way you interpret his language, that he was accepting the assignment as payment for the note—

> "A. Yes, sir.

> "Q. —was in this one telephone conversation?

> "A. Yes.

> "Q. And that was after the note was due?

> "A. Yes, sir.

> "Q. And you have told me the whole details of that conversation; is that correct?

> "A. Yes. He said—

> "Q. Is there anything that happened in that conversation that you haven't already told me about?

> "A. No. I'll repeat it. He called me and he said, 'Dom, your note is due.' And I said, 'Neil, I'm sorry, I haven't got my interim money yet and I can't pay it.' He said, 'Well, then, I'll take the South Phoenix property,' and I forgot all about it. I thought that was the end of the deal until I got your letter putting me on notice about a suit."

Although Martino was deceased at the time of the trial, his deposition was not received in evidence by the trial court. It should have been under Rule 26(d), Rules of Civil Procedure, 16 A.R.S., which provides in part:

> "*Use of depositions.* At the trial * * *, any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had due notice

thereof, in accordance with any one of the following provisions:

\* \* \* \* \* \*

"3. The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:

(i) That the witness is dead \* \* \*."

Shortly after this conversation took place and on 10 April 1964, Frumkin requested the title company holding the Norman contract to transfer it to him. At its request, Frumkin executed and delivered a warranty deed to the title company, wherein the Normans were named as grantees. The deed was thereafter held in the collection escrow. On 13 April 1964, Frumkin recorded the "Agreement". He then began to collect the $60 a month payments, which theretofore had been collected by the Martinos. Frumkin thereby assumed complete dominion over the assets recited in the "Agreement". He brought suit on the promissory note on 22 June 1964. On stipulation, Mrs. Martino was substituted for her husband in her capacity as Special Administratrix of his estate when he died after the suit was filed.

We find great similarity between the record in the instant case and the case of Bickart v. Greater Arizona Savings and Loan Association, 103 Ariz. 166, 438 P.2d 403 (1968). As did the Martinos with Frumkin, the Bickarts executed a note and mortgage with Greater Arizona Savings and Loan Association. Like Martino, Bickart defaulted on his note. Bickart then entered into an oral agreement with Greater Arizona Savings which provided that Bickart would furnish to Greater Arizona Savings a deed to the mortgaged property, in lieu of foreclosure, in return for which Greater Arizona Savings would release Bickart from liability on the note.

■ Because a deed in lieu of foreclosure in return for a release from liability is essentially an accord and satisfaction, the Court in Bickart was faced with this question: Must an accord and satisfaction to discharge a promissory note be in writing or the note surrendered under the Negotiable Instruments Law, which was then in effect (repealed 1 January 1968). The Court answered by saying:

"We may, therefore, regard the note in the instant case, as a simple contract for the payment of money, and—even though it be in writing—it may be varied or discharged by a new oral contract. 6 Williston on Contracts (Rev.Ed.) Section 1828. See also 2 Restatement of Contracts, Section 417.

"We hold, therefore, that under both contract law and the N.I.L., an oral accord and satisfaction will discharge a simple contract for the payment of money." 103 Ariz. at 168, 438 P.2d at 405.

■ In this case, we too have a simple contract for the payment of money. Bickart holds that an oral accord and satisfaction will discharge it. However, whether there was an accord and satisfaction in Bickart was not decided by the Court. That is the question that confronts us in this case. In response thereto, we hold that the Martinos' note was discharged by an oral accord and satisfaction when Martino and Frumkin agreed in their telephone conversation after the Martinos were in default that Frumkin would take the South Phoenix property. The evidence supports the Martinos' affirmative defense of payment. The trial court's judgment should have been in their favor, not Frumkin's.

In light of the decision we have reached, we find that we would serve no purpose in discussing the other issues raised by the parties concerning the professional differences of opinion which developed during the taking of Martino's deposition, certain technical objections in relation to the admissibility of the deposition into evidence, the reasonableness of attorney's fees awarded to Frumkin's counsel, or the propriety of the joint and several judgment entered against the Martinos by the trial court.

The issuance of the mandate in connection with this opinion will constitute a

directive to the trial court to vacate the judgment in favor of Frumkin and to enter a judgment of "no recovery" in favor of the Martinos.

DONOFRIO, P. J., and CAMERON, J., concur.