778 F.2d 1416
 13 Collier Bankr.Cas.2d 1400, Bankr. L. Rep. P 70,902
In re LEWIS W. SHURTLEFF, INC. and Frontier Properties,
Inc., Debtors.
Thomas D. ELLIOTT, Trustee, Plaintiff-Appellee,
v.
FRONTIER PROPERTIES/LP 102/Meadow Glen Arms/79, et al.,
Defendants-Appellants.
 No. 84-6213.
 United States Court of Appeals,
 Ninth Circuit.
 Submitted* Sept. 3, 1985.
Decided Dec. 20, 1985.
As Amended on Denial of Rehearings Jan. 23, 1986.
 
 Kevin J. Hoyt, Joel Estes, San Diego, Cal., for plaintiff-appellee.
 John M. Ross, San Diego, Cal., for defendants-appellants.
 Appeal from the United States District Court for the Southern District of California.
 Before SNEED, NELSON, and NORRIS, Circuit Judges.
 SNEED, Circuit Judge:
 
 
 1
 This is an appeal from an order of the district court setting aside as a voidable preference under 11 U.S.C. Sec. 547 (1982) the transfer of an apartment complex from the debtor-in-bankruptcy, Frontier Properties, to three limited partnerships. We affirm in part and vacate and remand in part.
 
 I.
 FACTS
 
 2
 Frontier Properties (Frontier) acquired the Cobble Square Apartments (the apartments) on April 20, 1979. In the transaction, the seller, Kenman, Ltd., assigned its interest in the underlying land sale contract to Frontier and, in exchange, Frontier paid cash, issued a short term note, and assumed various liabilities.
 
 
 3
 On the same day the apartments were acquired, Frontier agreed to transfer its interest in them to three different limited partnerships. Frontier executed three separate agreements. The first partnership, Meadow Glen, Ltd. (Meadow Glen), received an undivided 56.23% interest in the apartments in exchange for the payment of $250,156.50 in cash. The second partnership, Broadway, Ltd. (Broadway), traded property valued at $220,000 in exchange for an undivided 35.1438% interest in the apartments and a promissory note issued by Frontier for $169,365.75. The third partnership, Lexington, Ltd. (Lexington), traded property valued at $54,000 in exchange for an undivided 8.62% interest in the apartments and a note issued by Frontier in the sum of $29,657.76. To fulfill its part of the bargain, Frontier assigned to the three partnerships its interest in the land sale contract acquired from Kenman.
 
 
 4
 The parties evidenced their transactions by executing a warranty deed. For reasons that do not appear in the record, Frontier failed to record the deed until July 30, 1981. Eighteen days later, Frontier filed a petition under Chapter 11 of the Bankruptcy Code.
 
 
 5
 The trustee initiated proceedings in bankruptcy court to set aside the transfer of the apartments. The trustee asserted that the parties' delay in recording the warranty deed--and thus in perfecting the transaction--rendered the transfer a voidable preference under 11 U.S.C. Sec. 547 (1982).
 
 
 6
 The bankruptcy court ruled that the trustee had established all of the elements of a preferential transfer, save the requirement of section 547(b)(5) that the transfer enabled the preferred creditor to receive more than he would have received in a Chapter 7 liquidation if the transfer had not been made. In analyzing this requirement, the court began by determining that the partnerships' claims against the estate were equal in value to the amounts that each had paid in property or cash to acquire the subject property--according to its calculations, a combined total of $524,156.50. (In characterizing this figure as the combined amount paid by the partnerships to acquire the apartments, the court neglected to subtract the "boot" that Broadway and Lexington received to equalize their exchanges with Frontier--a total of $199,023.51. Nonetheless, because the "boot" took the form of debt from Frontier, the court's calculation of the total claim was correct.) The court then found that, whereas the partnerships would receive 10 to 13 percent of their claims in a Chapter 7 liquidation (that is, $52,415.65 to $68,140.35), the net value of the apartments on the date of the transfer, July 30, 1981, after taking into account the encumbrances on the property and the transaction cost of selling the building, was $27,500. Because this amount would satisfy only about 5 percent of the partnerships' claims--a far smaller share than the partnerships would receive in liquidation--the court concluded that the transfer was not preferential.
 
 
 7
 The district court reversed. The court found that the bankruptcy court had erred by overlooking the fact that, upon the distribution in Chapter 11, the partnerships also would receive a certain amount with respect to the surviving balance of their claims. Thus, in addition to the 5 percent of their claims realized through the transfer of the apartment complex, the partnerships would also receive from 10 to 13 percent of the unsatisfied 95 percent balance in a distribution at the close of the Chapter 11 proceeding. The combined total of the transfer and the distribution, the district court concluded, would exceed the amount the partnerships would have received under Chapter 7 had the transfer not occurred. Finding section 547(b)(5) satisfied, the district court set aside the transfer as preferential.
 
 II.
 DISCUSSION
 
 8
 Appellants raise three main arguments in this court. First, they claim that both courts below erred in finding that the challenged transfer involved "property of the debtor" within the meaning of 11 U.S.C. Sec. 547(b) (1982). Second, they argue that both lower courts also erred in finding that the transfer occurred within 90 days before the date Frontier filed its bankruptcy petition. Third, they contend that the district court was mistaken in holding that the transfer enabled the limited partnerships to receive more than they would have received in a Chapter 7 liquidation.
 
 
 9
 Understanding of these contentions will be enhanced by setting forth the relevant portion of section 547 of the Bankruptcy Code, which enables the trustee to set aside certain transfers made by the debtor during the 90 days immediately preceding bankruptcy. That section provides that the trustee may avoid
 
 
 10
 any transfer of property of the debtor--
 
 
 11
 (1) to or for the benefit of a creditor;
 
 
 12
 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;(3) made while the debtor was insolvent;
 
 
 13
 (4) made--... on or within 90 days before the date of the filing of the petition; ...
 
 
 14
 (5) that enables such creditor to receive more than such creditor would receive if--
 
 
 15
 (A) the case were a case under chapter 7 of this title;
 
 
 16
 (B) the transfer had not been made; and
 
 
 17
 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
 
 
 18
 11 U.S.C. Sec. 547(b) (1982).
 
 A. The "Property of the Debtor" Requirement
 
 19
 The appellants contend that, because the trustee failed to prove that Frontier held legal title to the apartments prior to the transfer, there was no transfer of "property of the debtor" as required by section 547(b). Frontier's interest in the land sale contract, the appellants maintain, is not "property" within the meaning of the statute.
 
 
 20
 The appellants' proposed construction is untenable. To begin with, it would negate language found elsewhere in section 547. In explaining when a transaction involving real property should be deemed perfected, section 547(e)(1)(A) expressly includes transfers of "the interest of a seller or purchaser under a contract for the sale of real property." Had Congress intended to exclude interests in land contracts from "property" subject to the preference provision, it would not have bothered to include such interests in its definition of perfection.
 
 
 21
 More significantly, the appellants ignore the broad definition given to the phrase "property of the estate" by section 541 of the Code. Such property includes "all legal or equitable interests of the debtor in property." 11 U.S.C. Sec. 541(a)(1) (1982); see also In re Beavers, 26 B.R. 502, 504 (Bankr.N.D.Ala.1983) ("property of the estate" includes the debtor's possessory and purchase rights under a valid oral agreement for the sale of land); In re Rose, 7 B.R. 911, 912-13 (Bankr.S.D.Tex.1981) (the purchaser's rights under a "contract for deed," which creates no legal or equitable title in the purchaser until he has fully performed his part of the contract, are "property of the estate"). The term "property" used in section 547 enjoys a similarly broad scope. Frontier's interest in the contracts it acquired from Kenman, therefore, is "property of the debtor" subject to the preference provisions.
 
 
 22
 Appellants propose a second theory of why the transaction did not involve "property of the debtor." They assert that Frontier's failure to record the warranty deed constituted a wrongful detention of their property and therefore subjected the apartment building to a constructive trust in their favor pursuant to California Civil Code Sec. 2223. Appellants conclude that, because section 541 of the Code excludes from the debtor's estate property held solely in trust for others, see 11 U.S.C. Sec. 541(d) (1982); In re Bruce Farley Corp., 612 F.2d 1197 (9th Cir.1980), the apartments could not have been the subject of a preferential transfer.
 
 
 23
 Although some courts have treated constructive trusts under state law as trusts for bankruptcy purposes, see, e.g., In re Quality Holstein Leasing, 752 F.2d 1009, 1012-13 (5th Cir.1985), "we cannot accept the proposition that the bankruptcy estate is automatically deprived of any funds that state law might find subject to a constructive trust," In re North American Coin & Currency, Ltd., 774 F.2d 1390, 1391 (9th Cir.1985). No state court decree imposing a trust exists in the present case; thus appellants' entitlement to such a remedy is inchoate, at best. See id. Moreover, the appellants introduced no evidence at trial to establish that Frontier's failure to record was wrongful; in fact, as the appellees argue, there may have been rational--if not necessarily proper--business reasons why both parties would have desired that the deed not be recorded. In any case, although the equities clearly favor the appellants as against Frontier, the balance of the equities between the appellants and Frontier's other creditors is far from clear. In light of the Bankruptcy Code's strong policy in favor of ratable distribution among all creditors, see id. (citing In re Visiting Home Services, 643 F.2d 1356, 1360 (9th Cir.1981), and Hassen v. Jonas, 373 F.2d 880, 881 (9th Cir.1967) ), we decline to exclude the apartments from the bankrupt's estate by subjecting them to a constructive trust.
 
 B. The Date of the Transfer
 
 24
 Appellants next contend that the transfer took place on April 20, 1979--when the parties executed their agreements--and not on July 30, 1982--when Frontier recorded the warranty deed. Accordingly, they conclude that the transfer was not made "on or within 90 days before the date of the filing of the petition" as is required by 11 U.S.C. Sec. 547(b)(4)(A) (1982).
 
 
 25
 The Code provides that "a transfer is made ... at the time such transfer is perfected, if such transfer is perfected" more than ten days after the transfer takes effect between the parties. 11 U.S.C. Sec. 547(e)(2)(B) (1982). The Code further provides that
 
 
 26
 a transfer of real property[,] ... including the interest of a seller or purchaser under a contract for the sale of real property, is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee.
 
 
 27
 Id. Sec. 547(e)(1)(A). Under this provision the date a transfer is perfected turns on state law, see 4 L. King, Collier on Bankruptcy p 547.46 (15th ed. 1985)--in this case, the law of the state of Utah.
 
 
 28
 Under Utah law, a valid written agreement to transfer an interest in real property is immediately binding on the parties to the agreement and on others having actual notice of the transaction; but until it is recorded, such an agreement does not affect the rights of third parties without notice. See Utah Code Ann. Sec. 57-1-6 (1953). Relying on two ancient Utah cases, Neponset Land & Livestock Co. v. Dixon, 10 Utah 334, 37 P. 573 (1894); and Toland v. Corey, 6 Utah 392, 24 P. 190 (1890), aff'd without opinion, 154 U.S. 499, 14 S.Ct. 1144, 38 L.Ed. 1062 (1894), the appellants respond that they perfected their interest by taking possession of the property at the time of the original transaction.
 
 
 29
 The citations to Toland and Neponset are misplaced. At most, these cases stand for the principle that occupancy serves as actual notice of ownership. Nothing in the record of the present case, however, indicates that the appellants occupied, operated, or took possession of the apartments. The appellants declined to present such evidence at trial, and the only pieces of evidence to support their claim of possession to which they point are tax returns showing that they derived income from the property. While the returns indicate who enjoyed the fruits of the property, they do little to settle the question of who retained possession and exercised control. Certainly, the returns themselves, being confidential documents, did not serve to put third parties on notice as to the appellants' property rights. In the face of the trustee's unrefuted testimony that Frontier operated the apartments, the appellants have failed to show that they exercised the sort of possessory rights that would constitute actual notice of ownership, and thus perfect the transfer, under Utah law.
 
 
 30
 We therefore conclude that the transfer of the apartments took place when the warranty deed was recorded on July 30, 1981--well within the 90-day period prescribed by the Bankruptcy Code.
 
 
 31
 C. Creditors' Receipts Compared With a Chapter 7 Distribution
 
 
 32
 Appellants' final challenge on appeal concerns the district court's determination that the transfer enabled the limited partnerships to receive more than they would have in a Chapter 7 liquidation. The bankruptcy court, as previously noted, found that the appellants received less than they would have received in a Chapter 7 distribution and that, as a consequence, the transfer was not preferential under the Code. Reversing, the district court found that in applying the "greater amount" test, the bankruptcy court had disregarded the distribution appellants would receive on the remainder of their claims at the close of the bankruptcy proceeding. The appellants respond on appeal that once the transfer of the apartments was completed, their claims against the debtor were extinguished; in the alternative, they argue that even if they possessed outstanding claims after the transfer, they have waived those claims. Because we believe that both lower courts erred not only in their characterization of the real estate transactions between Frontier and each of the limited partnerships, but also in their subsequent application of the "greater amount" test, we set forth our own analysis.
 
 
 33
 1. The "Greater Amount" Test.
 
 
 34
 The Bankruptcy Code provides that a transfer, in order to be preferential, must
 
 
 35
 enable [a] creditor to receive more than such creditor would receive if--
 
 
 36
 (A) the case were a case under chapter 7 of this title;
 
 
 37
 (B) the transfer had not been made; and
 
 
 38
 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
 
 
 39
 11 U.S.C. Sec. 547(b)(5) (1982).
 
 
 40
 In applying this test to the instant case, two findings relied on by the district court must be borne in mind. First, in a Chapter 7 proceeding the limited partners' claims against the estate would have been unsecured. As the district court observed, there is no way that Frontier's promise to convey an interest in the apartments to each of the limited partnerships can be construed as a secured transaction. Second, unsecured creditors in a Chapter 7 proceeding would have received no more than thirteen percent of their claims against the estate.
 
 
 41
 These findings are significant in view of the Supreme Court's decision in Palmer Clay Products Co. v. Brown, 297 U.S. 227, 56 S.Ct. 450, 80 L.Ed. 655 (1936). The Court held that whether a particular transfer is preferential should be determined "not by what the situation would have been if the debtor's assets had been liquidated and distributed among his creditors at the time the alleged preferential payment was made, but by the actual effect of the payment as determined when bankruptcy results." Id. at 229, 56 S.Ct. at 450. This analysis requires that in determining the amount that the transfer "enables [the] creditor to receive," 11 U.S.C. Sec. 547(b)(5) (1982), such creditor must be charged with the value of what was transferred plus any additional amount that he would be entitled to receive from a Chapter 7 liquidation. The net result is that, as long as the distribution in bankruptcy is less than one-hundred percent, any payment "on account" to an unsecured creditor during the preference period will enable that creditor to receive more than he would have received in liquidation had the payment not been made. See id.; Barash v. First Galesburg National Bank, 658 F.2d 504, 508-09 (7th Cir.1981); In re Saco Local Development Corp., 30 B.R. 862, 865-66 (Bankr.D.Me.1983); In re Utility Stationery Stores, 12 B.R. 170, 179 (Bankr.N.D.Ill.1981). The Court in Palmer Clay Products demonstrated this proposition with a simple example:
 
 
 42
 [W]here the creditor's claim is $10,000, the payment on account $1000, and the distribution in bankruptcy 50%, the creditor to whom the payment on account is made receives $5500, while another creditor to whom the same amount was owing and no payment on account was made will receive only $5000.
 
 
 43
 Palmer Clay Products, 297 U.S. at 229, 56 S.Ct. at 451.
 
 
 44
 The district court thought Palmer Clay Products dispositive. Noting that the limited partnerships' claims were unsecured and that the distribution in a Chapter 7 proceeding would have been less than one-hundred percent, the court concluded that the transfer was necessarily preferential. Despite its initial appeal, however, the court's reasoning is based on a faulty analysis of the facts.
 
 
 45
 Unlike the situation in Palmer Clay Products, the transfer of the apartments was not a payment "on account"; rather, it constituted full performance of a contractual obligation. The consequences of this distinction are significant. If this court were to find the transfer voidable, the appellants would have claims against the estate for breach of contract and, in the case of the partners of Broadway and Lexington, claims for the value of their unsecured notes from Frontier. On the other hand, if the transfer were upheld, there would be no claims against the estate for breach of contract--with the result that the appellants would possess only the apartments and, in the case of Broadway and Lexington, claims arising from the notes.
 
 
 46
 Given this state of affairs, the net value of the apartments is a crucial fact in determining whether the transfer was preferential. If the apartments are worth substantially less than the damages for contractual breach, the transfer may not satisfy the "greater amount" test codified in 11 U.S.C. Sec. 547(b)(5) (1982). Therefore, we must examine the finding with respect to the value of the apartments.
 
 
 47
 2. The Value of the Apartments.
 
 
 48
 The bankruptcy court found that the apartments had a net value of $27,500. It arrived at this figure by subtracting from the property's estimated market value ($1,750,000) both the amount of the encumbrances against the property ($1,600,000) and the costs of reselling the property (7% of the market price--$122,500). The district court affirmed this finding.
 
 
 49
 We have grave doubts about the accuracy of this valuation process. Given that the limited partnerships paid, altogether, the equivalent of $325,132.99 (property and cash having a total value of $524,156.50 less the $199,023.51 received by Broadway and Lexington as "boot") in order to obtain the property from Frontier, the figure arrived at by the courts below seems more than a little odd. If this figure is correct, we must assume either that the property greatly depreciated in value after the sale, or that the appellants paid an exhorbitant price for their interest in the property at the outset.
 
 
 50
 Several components of the calculation made below seem open to question. First, it is unclear from the record how the courts derived the figure of $1,600,000 for encumbrances. The purchase agreement between Frontier and Meadow Glen stated that Meadow Glen's share of existing encumbrances for its 56.23% undivided interest amounted to $886,251.80. Based on this figure, the total encumbrances at the time of sale would have been $1,576,119.15. Thus, unless the figure on the purchase agreement was incorrect or additional liabilities were incurred after the sale, the courts below overestimated the encumbrances on the property by $23,880.85. If so, the value of the property transferred was at least $51,380.85, not $27,500.
 
 
 51
 Second, we are unsure whether the bankruptcy court should have deducted the transaction costs of a sale in computing the value of the property transferred. Section 547(b) itself does not address the method by which transferred property should be appraised. Nor does the Code appear to authorize a uniform method for valuation. For example, in assessing the extent of a creditor's secured status, courts are to determine the value of collateral "in light of the purpose of the valuation and of the proposed disposition or use of such property," 11 U.S.C. Sec. 506(a) (1982). By contrast, for the purpose of calculating exemptions, value is defined as "fair market value as of the date of the filing of the petition," id. Sec. 522(a)(2). Without deciding here whether the bankruptcy court erred in deducting transaction costs from the property's value, we simply observe that the propriety of such a deduction might turn on whether the limited partnerships planned to liquidate the asset immediately or retain it for its tax benefits and investment potential. If the bankruptcy court did err in deducting the transaction costs of a sale, the property transferred was worth at least $150,000.
 
 
 52
 3. The "Greater Amount" Test Applied.
 
 
 53
 As previously noted, the "greater amount" test requires a comparison of the amount a creditor would receive in a hypothetical Chapter 7 distribution were the transfer disallowed with the amount the contested transfer, if allowed, would actually enable the creditor to receive. Needless to say, each of the limited partnerships must be considered separately.
 
 
 54
 In a Chapter 7 proceeding, each of the limited partnerships would have received no more than thirteen percent of its total claim against the estate.[1] This "total claim" would, in each case, have included damages for breach of contract (based on restitution of the amount of money or non-cash equivalents paid by each of the limited partnerships in order to acquire its share of the apartments)[2] and, in the case of Broadway and Lexington, the indebtedness arising from the promissory notes acquired from Frontier as "boot" in their tax-free property exchanges.
 
 
 55
 On the other hand, the transfer, if permitted to stand, enabled each of the limited partnerships to receive its allocable share of the net value of the apartments and, in the case of Broadway and Lexington, a thirteen percent distribution on their remaining claims arising from the promissory notes. Although the value of these remaining claims is clear, the discussion above pertaining to the bankruptcy court's method of appraisal yields four possible assumptions regarding the net value of the apartments: (1) $27,500 if the bankruptcy court was correct in all its calculations; (2) $51,380.85 if the court miscalculated the encumbrances; (3) $150,000 if the court erred in deducting the transaction costs of a hypothetical sale; and (4) $173,880.85 if the court was mistaken in both regards.
 
 
 56
 As demonstrated by the figures set forth in the appendix to this opinion, these assumptions yield differing results under section 547(b)(5). Under the first assumption--that relied on by the district court--the transfer of the apartments would have been preferential only as to Broadway. See Appendix, table 1. Under the second assumption, the transfer would have been preferential as to Broadway and Lexington, but not as to Meadow Glen. See Appendix, table 2. Only under the third and fourth assumptions would the transfer have been preferential with respect to all the limited partnerships. See Appendix, tables 3-4.
 
 
 57
 4. Summary.
 
 
 58
 The upshot is that the facts relied on by the district court do not support its legal conclusion concerning the outcome of the "greater amount" test. If the bankruptcy court was correct in finding that the apartments had a net value of $27,500, the transfer was preferential, to repeat, only as to Broadway.
 
 
 59
 This would justify a reversal of the district court's judgment with a remand to make it conform with this conclusion. We are, however, reluctant to do so. This is because we are unsure whether the bankruptcy court erred in calculating the net value of the apartments, and thus in applying 11 U.S.C. Sec. 547(b)(5) (1982). Nor are we certain that the district court correctly understood the "greater amount" test. We think it best, therefore, to afford the district court the opportunity both to engage in additional factfinding and to reconsider its decision in light of this opinion.III.
 
 CONCLUSION
 
 60
 Thus, we affirm the district court's holding that the apartments were "property of the debtor" within the meaning of 11 U.S.C. Sec. 547(b) (1982), and that the transfer was made within the ninety-day period preceding bankruptcy. We vacate the district court's holding that the transfer satisfied the "greater amount" test of 11 U.S.C. Sec. 547(b)(5) (1982) with respect to all the limited partnerships, and we remand the case for additional factfinding and reconsideration in light of this opinion.
 
 
 61
 AFFIRMED IN PART AND VACATED AND REMANDED IN PART.
APPENDIX
TABLE 1
 ASSUMPTION NO. 1
 ----------------
 $27,500
-------------------------------------------------------------------------------
Distribution to Creditor in a Amount that Transfer Enabled
 Chapter 7 Proceeding in Absence Creditor to Receive
 of Transfer
-------------------------------------------------------------------------------
 Broadway, Ltd.
 --------------
Claim on Unsecured 35.1438% of Net Value of
 Note .................... $169,365.75 Apartments ............... $9,664.55
Claim for Breach of Distribution at 13% on
 Contract ................. $50,634.25 Unsecured Note .......... $22,017.55
-------------------------------------------------------------------------------
Total Claim ............... $220,000.00
 Total Amount that Transfer
Distribution to Broadway Enable Broadway To
 at 13% ................... $28,600.00 Receive ................. $31,682.10
 ----------- ----------
-------------------------------------------------------------------------------
 Lexington, Ltd.
 ---------------
Claim on Unsecured 8.62% of Net Value of
 Note ..................... $29,657.76 Apartments ............... $2,370.50
Claim for Breach of Distribution at 13% on
 Contract ................. $24,342.24 Unsecured Note ........... $3,855.51
-------------------------------------------------------------------------------
Total Claim ................ $54,000.00
 Total Amount that Transfer
Distribution to Lexington Enabled Lexington To
 at 13% .................... $7,020.00 Receive .................. $6,226.01
 ----------- ----------
-------------------------------------------------------------------------------
 Meadow Glen, Ltd.
 -----------------
Claim for Breach of 56.23% of Net Value of
 Contract ................ $250,156.50 Apartments .............. $15,463.25
-------------------------------------------------------------------------------
Total Claim ............... $250,156.50
 Total Amount that Transfer
Distribution to Meadow Enabled Meadow Glen
 Glen, Ltd. at 13% ........ $32,520.35 To Receive .............. $15,463.25
 ----------- ----------
-------------------------------------------------------------------------------
TABLE 2
 ASSUMPTION NO. 2
 ----------------
 $51,380.00
-------------------------------------------------------------------------------
Distribution to Creditor in a Amount that Transfer Enabled
 Chapter 7 Proceeding in Absence Creditor to Receive
 of Transfer
-------------------------------------------------------------------------------
 Broadway, Ltd.
 --------------
Claim on Unsecured 35.1438% of Net Value of
 Note .................... $169,365.75 Apartments .............. $18,056.89
Claim for Breach of Distribution at 13% on
 Contract ................. $50,634.25 Unsecured Note .......... $22,017.55
-------------------------------------------------------------------------------
Total Claim ............... $220,000.00
 Total Amount that Transfer
Distribution to Broadway Enable Broadway To
 at 13% ................... $28,600.00 Receive ................. $40,074.44
 ----------- ----------
-------------------------------------------------------------------------------
 Lexington, Ltd.
 ---------------
Claim on Unsecured 8.62% of Net Value of
 Note ..................... $29,657.76 Apartments ............... $4,428.96
Claim for Breach of Distribution at 13% on
 Contract ................. $24,342.24 Unsecured Note ........... $3,855.51
-------------------------------------------------------------------------------
Total Claim ................ $54,000.00
 Total Amount that Transfer
Distribution to Lexington Enabled Lexington To
 at 13% .................... $7,020.00 Receive .................. $8,248.47
 ----------- ----------
-------------------------------------------------------------------------------
 Meadow Glen, Ltd.
 -----------------
Claim for Breach of .................... 56.23% of Net Value of
 Contract $250,156.50 Apartments $28,890.97
-------------------------------------------------------------------------------
Total Claim ............... $250,156.50
 Total Amount that Transfer
Distribution to Meadow Enabled Meadow Glen
 Glen, Ltd. at 13% ........ $32,520.35 To Receive .............. $28,890.97
 ----------- ----------
-------------------------------------------------------------------------------
TABLE 3
 ASSUMPTION NO. 3
 ----------------
 $150,000
-------------------------------------------------------------------------------
Distribution to Creditor in a Amount that Transfer Enabled
 Chapter 7 Proceeding in Absence Creditor to Receive
 of Transfer
-------------------------------------------------------------------------------
 Broadway, Ltd.
 --------------
Claim on Unsecured 35.1438% of Net Value of
 Note .................... $169,365.75 Apartments .............. $52,715.70
Claim for Breach of Distribution at 13% on
 Contract ................. $50,634.25 Unsecured Note .......... $22,017.55
-------------------------------------------------------------------------------
Total Claim ............... $220,000.00
 Total Amount that Transfer
Distribution to Broadway Enable Broadway To
 at 13% ................... $28,600.00 Receive ................. $74,733.25
 ----------- ----------
-------------------------------------------------------------------------------
 Lexington, Ltd.
 ---------------
Claim on Unsecured 8.62% of Net Value of
 Note ..................... $29,657.76 Apartments .............. $12,930.00
Claim for Breach of Distribution at 13% on
 Contract ................. $24,342.24 Unsecured Note ........... $3,855.51
-------------------------------------------------------------------------------
Total Claim ................ $54,000.00
 Total Amount that Transfer
Distribution to Lexington Enabled Lexington To
 at 13% .................... $7,020.00 Receive ................. $16,785.51
 ----------- ----------
-------------------------------------------------------------------------------
 Meadow Glen, Ltd.
 -----------------
Claim for Breach of 56.23% of Net Value of
 Contract ................ $250,156.50 Apartments .............. $84,345.00
-------------------------------------------------------------------------------
Total Claim ............... $250,156.50
 Total Amount that Transfer
Distribution to Meadow Enabled Meadow Glen
 Glen, Ltd. at 13% ........ $32,520.35 To Receive .............. $84,345.00
 ----------- ----------
-------------------------------------------------------------------------------
TABLE 4
 ASSUMPTION NO. 4
 ----------------
 $173,880.85
-------------------------------------------------------------------------------
Distribution to Creditor in a Amount that Transfer Enabled
 Chapter 7 Proceeding in Absence Creditor to Receive
 of Transfer
-------------------------------------------------------------------------------
 Broadway, Ltd.
 --------------
Claim on Unsecured 35.1438% of Net Value of
 Note .................... $169,365.75 Apartments .............. $61,108.34
Claim for Breach of Distribution at 13% on
 Contract ................. $50,634.25 Unsecured Note .......... $22,017.55
-------------------------------------------------------------------------------
Total Claim ............... $220,000.00
 Total Amount that Transfer
Distribution to Broadway Enable Broadway To
 at 13% ................... $28,600.00 Receive ................. $83,125.89
 ----------- ----------
-------------------------------------------------------------------------------
 Lexington, Ltd.
 ---------------
Claim on Unsecured 8.62% of Net Value of
 Note ..................... $29,657.76 Apartments .............. $14,988.53
Claim for Breach of Distribution at 13% on
 Contract ................. $24,342.24 Unsecured Note ........... $3,855.51
-------------------------------------------------------------------------------
Total Claim ................ $54,000.00
 Total Amount that Transfer
Distribution to Lexington Enabled Lexington To
 at 13% .................... $7,020.00 Receive ................. $18,844.04
 ----------- ----------
-------------------------------------------------------------------------------
 Meadow Glen, Ltd.
 -----------------
Claim for Breach of 56.23% of Net Value of
 Contract ................ $250,156.50 Apartments .............. $97,773.20
-------------------------------------------------------------------------------
Total Claim ............... $250,156.50
 Total Amount that Transfer
Distribution to Meadow Enabled Meadow Glen
 Glen, Ltd. at 13% ........ $32,520.35 To Receive .............. $97,773.20
 ----------- ----------
-------------------------------------------------------------------------------
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to 9th Cir.R. 3(f) and Fed.R.App.P. 34(a)
 
 
 [1]
 Because the bankruptcy court derived this percentage allocation from the estimated value of the estate, the district court should bear in mind on remand that this figure should increase if the apartments are found to be more valuable than initially determined
 
 
 [2]
 We need not decide here whether a restitutionary measure of damages is more appropriate under Utah law than one based upon the limited partnerships' expectation interests. The trustee took the position in the bankruptcy court that restitution was the proper yardstick of the limited partnerships; claims, and he is estopped at this late stage in the litigation from adopting a different theory