See also, BAP 9th Cir., 92 B.R. 416.

Ali M.M. Mojdehi, Baker & McKenzie, San Diego, Cal., for Fredman.

Dennis J. Wickham, Judi S. Foley, Seltzer, Caplan, Wilkins & McMahon, San Diego, Cal., for C.E. Mach.

LOUISE DECARL MALUGEN, Bankruptcy Judge.

## In re NUCORP ENERGY, INC., an Ohio corporation, and its affiliates, Debtors.

### Milton FREDMAN, Co–Liquidating Trustee of the Nucorp Liquidating Trust, Plaintiff,

v.

### C.E. MACHINE COMPANY, a Kansas corporation, Defendant.

Adv. No. C85–0445–P11.

Bankruptcy No. 82–3106–K11.

United States Bankruptcy Court, S.D. California.

June 27, 1989.

## I

## INTRODUCTION

This proceeding is brought by Milton Fredman ("Fredman"), Co–Liquidating Trustee for Taylor Rig & Equipment Company ("Taylor Rig"), an affiliated subsidiary in the consolidated estates of Nucorp Energy, Inc. (the "estate"), against C.E. Machine Company ("C.E.") to recover a purported preferential transfer. Prior to trial, the parties stipulated that the only issues in controversy are whether the estate's prior settlement of a relief from stay action commenced by C.E. precludes the preference suit and/or whether the trans-

---

fer is avoidable under § 547(b)(5) such that it enabled C.E. to receive more than it would have been entitled to under a liquidation.

After trial of these issues, the Court finds in favor of C.E. and concludes that Fredman has failed to establish that C.E. received a greater dividend on its unsecured claims by retaining the payment than it would have otherwise received by sharing in the estate's distribution to unsecured creditors under the confirmed plan. The Court further finds that it has jurisdiction to hear this matter under 28 U.S.C. § 1334(b) and General Order 312–D of the United States District Court, and that this is a core proceeding under 28 U.S.C. § 157(b)(2)(F).

## II

### STATEMENT OF FACTS

Nucorp Energy, Inc., and its 27 affiliates filed a Chapter 11 petition on July 27, 1982. By order of this Court, on February 4, 1983, Barry J. Galt was appointed as Chapter 11 trustee ("Trustee") to administer the estate. On July 1, 1983, C.E. filed a complaint for relief from stay against the Trustee and Taylor Rig to enforce an artisan's lien against certain components known as "draw works" and "drilling rigs" manufactured by C.E. for Taylor Rig's marketing of oil well machinery. Trustee answered the complaint without asserting a preference counterclaim against C.E.[1]

After some negotiation, the parties reached a settlement and the Court approved their Stipulation and Settlement of Adversary Proceeding ("Settlement") on January 24, 1984. In basic terms, the Settlement provided that C.E. would retain the components subject to its possessory lien, withdraw its claims against the estate and dismiss the complaint for relief from stay.

Paragraph 5 of the Settlement further provided:

> This Stipulation is a complete settlement of all issues raised in the complaint, and all issues existing or which may exist in respect to any indebtedness which may be owing to C.E. MACHINE by TAYLOR for services rendered.

On February 1, 1985, more than a year after the Court approved the settlement, Trustee instituted a preference action against C.E. to recover a payment of $22,622 made by Taylor Rig within 90 days of the bankruptcy filing.[2] Fredman succeeded the Trustee as plaintiff in the action upon entry of the District Court's order on December 20, 1985, confirming the Second Amended Joint Plan of Reorganization. The action was then stayed by order of this Court until September 3, 1987, when Fredman filed and served his notice of intent to activate this proceeding. C.E. then filed its answer on October 20, 1987, and the case proceeded to trial.

In their pretrial order, the parties stipulated that: The payment was made within 90 days of the petition; the payment was applied to an antecedent debt; Taylor Rig was insolvent at the time of the payment; and, under the terms of the Second Amended Joint Plan, unsecured creditors were entitled to a dividend of 9.3 cents per dollar on their claims. At no time in the proceedings did Fredman contest the validity of C.E.'s claims against the estate which included a secured claim in the amount of $364,389.85, and an unsecured claim in the amount of $77,397.80. The parties also acknowledged that during the settlement negotiations, Trustee, principals of C.E. and their respective counsel never expressly discussed preferences.

The record before the Court indicates that the provable value of the components

---

1. Because C.E. commenced the action prior to August 1, 1983, the effective date of the Bankruptcy Rules, the action proceeded as an adversary proceeding rather than by way of a contested motion under B.R. 4001(a).

2. There is a discrepancy in the record over the actual amount of the payment. The Stipulated Pretrial Order indicates a total of $22,616. However, at trial, Charles C. Eck, President of C.E., testified that a payment of $22,622 was received in June 1982. His testimony is corroborated by a copy of the check executed by Taylor Rig in the sum of $22,622, presented as Defendant's Exhibit 45. This amount is also verified by an invoice summary attached at the bottom of the check.

subject to C.E.'s artisan's lien was $225,-000. C.E. maintained in its relief from stay complaint that the provable value of the components had been $225,000. While the settlement between Trustee and C.E. did not set forth a valuation, Mr. Eck testified at trial that the resale value of the collateral was $225,000. This testimony was admitted over the objection of Fredman. However, Fredman offered no evidence to controvert this valuation. Each party also presented an exhibit valuing the components at $225,000 to estimate the deficiency amount of C.E.'s secured claim for purposes of performing a liquidation analysis of its total unsecured claims against the estate.

Finally, the Court heard testimony from each side as to the nature of the settlement and the intent of the settlement negotiations. The Court finds that this testimony is inconclusive in determining the intended scope of the release found in paragraph 5 of the Settlement. The testimony of Judy S. Foley, counsel for C.E. during the settlement negotiations, revealed that Trustee's counsel drafted the Settlement. Mr. Eck testified that during the settlement negotiations, C.E. was never told that the settlement was a "partial settlement". In short, the testimony revealed nothing more than the parties' admission that they never had discussed preferences.

## III

### STATEMENT OF ISSUES

I. Whether Fredman is precluded from maintaining the preference action by virtue of the prior settlement with C.E.;

II. Whether Fredman is barred from maintaining the action on any other grounds; and,

III. Assuming that the action can be maintained by Fredman, whether the estate is entitled to recovery under § 547(b)(5).

## IV

### DISCUSSION

The parties devoted a substantial portion of the trial to the issue of the preclusive effect of the settlement and release upon the present action. Fredman asserts that the settlement does not bar the preference suit, since the parties never discussed preferences and the release found in paragraph 5 does not specifically mention preferences. Moreover, Fredman asserts that under California law, the release is inoperative as to preferences, since a general release does not extend to claims which are unknown or unsuspected and, at the time of the settlement, the parties were unaware of any potential preference claims against C.E. Cal.Civ.Code § 1542 (West 1989).

On the other hand, C.E. contends that the intention of the parties was to achieve a complete and final settlement of all existing and potential claims and the language in paragraph 5 evidences this intent by including a release of "all issues existing or which may exist in respect to any indebtedness" by Taylor Rig. According to C.E., such language necessarily includes preference claims since they are inextricably related to the estate's indebtedness to C.E. Under § 502(h) of the Bankruptcy Code, the estate's recovery of a preference would create a new debt to C.E. to the extent that C.E. is forced to surrender payments previously used to reduce its claims against the estate. Since the effect of recovering the preference is to create an indebtedness of the estate to C.E. [*In re Verco Industries*, 704 F.2d 1134 (9th Cir.1983)], the Court must find that the present action falls within the scope of "issues ... in respect to any indebtedness" finally resolved by the settlement and release.

As previously indicated, the Court finds that the testimony as to the true intentions of the parties in arriving at the settlement is inconclusive. However, in hindsight, it would seem that the prospect of later having to disgorge over $22,000 in pre-petition payments would have been a material consideration to C.E. in the settlement negotiations. In addition, the record is less than clear as to the parties' respective awareness of the estate's potential preference claims against C.E. at the time of the settlement negotiations. In light of all this, the Court is inclined to determine first

whether the retained payment amounted to an avoidable preference.

By virtue of the parties' agreement that, with the exception of § 547(b)(5), all elements of a preference are attributable to the payment, the Court is left with the task of performing a distribution analysis to determine if C.E. obtained a greater return on its claims against the estate by retaining the payment than it would have otherwise received by surrendering the payment and asserting its claims against the estate. In performing this analysis, the Court must determine the actual effect of the payment at the time of the bankruptcy petition. *Palmer Clay Products Co. v. Brown*, 297 U.S. 227, 56 S.Ct. 450, 80 L.Ed. 655 (1936); *In re Lewis W. Shurtleff, Inc.*, 778 F.2d 1416 (9th Cir.1985); *In re X.R.X. Supply Co., Inc.*, 60 B.R. 284 (Bankr.W.D.Ky. 1986). This inquiry involves a comparison between the value of the transfer plus any additional dividend paid on the creditor's claims against the estate with the estate's projected distribution on the creditor's entire claim (assuming that the creditor first disgorged the transfer). *Lewis v. Shurtleff, Inc.*, 778 F.2d at 1421. In performing the analysis, the Court may also take into account the fact that the creditor has withdrawn the claim or will forfeit the claim in exchange for retaining the transfer. *Id.* at 1422.

In the present case, the net result from leaving the settlement undisturbed—including C.E.'s complete release of all its claims—and allowing C.E. to retain the payment is that C.E. receives marginally more than it would have received had it surrendered the payment and participated in the plan distribution. This conclusion is best demonstrated by the following analysis provided by counsel for C.E.:

| | | |
|---|---|---|
| Secured Claim | $364,389.85 | |
| Less retained components | (225,000.00) | |
| Deficiency | | $139,389.85 |
| Unsecured Claim | | 77,397.80 |
| Preference Payment | | 22,662.00 |
| Total Unsecured Claim | | 239,449.65 |
| Dividend Rate | | × 9.3% |
| Total Expected Distribution | | 22,268.82 |
| Less Preference | | 22,662.00 |
| Gain to C.E. (Net Loss to Estate) | | ($ 393.18) |

Counsel for Fredman asserts a competing distribution analysis. He argues that the Court should consider the $22,662 retained payment as a claim separate from the released, unsecured claims when performing the distribution analysis under § 547(b)(5). Accordingly, the Court should add a 9.3 percent dividend on C.E.'s released claims to the retained payment to calculate how C.E.'s recovery exceeded the expected return on its claims under the plan.

Under this approach, the analysis would be as follows:

| | | | |
|---|---|---|---|
| Secured Claim | | $364,389.85 | |
| Less Retained Components | | (225,000.00) | |
| Deficiency | | $139,389.85 | |
| Unsecured Claim | | 77,397.80 | |
| Preference Payment | | 22,662.00 | |
| Total Unsecured Claims | | | $239,449.65 |
| Dividend Rate | | | 9.3% |
| Total Expected Distribution | | | $ 22,268.82 |
| Less: Preference | | $ 22,662.00 | |
| 9.3% Dividend on Deficiency (.093 × 139,389.85) | | 12,963.85 | |
| 9.3% Dividend on Unsecured Claim | | 7,197.95 | |
| (.093 × 77,397.80) | | | $ 42,430.62 |
| Gain to C.E. (Net Loss to Estate) | | | ($ 20,161.80) |

Under this analysis C.E. has received a significantly greater return by retaining the payment, since the plan calls for less than a 100 percent distribution on unsecured claims, C.E. received a sizeable partial payment prior to the petition and would receive a 9.3 percent distribution on the balance of its released claims.

The Court rejects this alternative approach since it is not sensitive to this Court's belief that the potential for the trustee's subsequent preference suit would have materially affected C.E.'s settlement and release of its claims. Fredman's preference analysis completely disregards C.E.'s release of its claims and obfuscates the issue of the preclusive effect of the Settlement upon the subsequent preference suit. Without conclusive evidence of the parties' intent in drafting the Settlement, the Court is not prepared to adopt any analysis which assumes that, at the petition date, C.E. would have agreed to a settlement providing for complete release of all its claims and yet remain exposed to a preference suit for all retained pre-settlement payments.

At the same time, the Court will not ignore the fact that as a consequence of the settlement, C.E. has withdrawn its entire claim against the estate so that, in reality, it will not share in any distribution from this estate. Therefore, the Court believes that the distribution analysis should be based on with the assumption that, at the time of the petition, C.E. still possessed its entire claim against the estate, the Settlement operated as a release of all claims and the net effect of avoiding this payment would be to reinstate C.E.'s entire claim against the estate (minus, of course, the secured portion of its claim satisfied by the retention and resale of the components).

Utilizing those assumptions, the net benefit to C.E. in retaining the payment is $318. However, given the size of the estate and class of unsecured creditors, the total amount of distributions paid on unsecured claims and the delay of Fredman and his predecessor in filing and prosecuting this action, the Court finds that this gain is *de minimus. See, In re Hygrade En-*velope *Corp.*, 272 F.Supp. 451 (E.D.N.Y. 1967) (interpreting § 60 of the Bankruptcy Act), *rev'd on other grounds,* 393 F.2d 60 (2d Cir.1968). The Court holds that Fredman has not shown that C.E., in fact, received more on its claims against the estate by retaining the payment and withdrawing its claims.

By holding that the payment to C.E. did not constitute a preference, the Court deems it unnecessary to discuss the remaining issues presented at trial.

## V

## CONCLUSION

In light of the foregoing, the Court enters judgment for C.E. This Memorandum Decision constitutes findings of fact and conclusions of law. Defendant's counsel is instructed to present an order in conformance with this Memorandum Decision within ten (10) days of its entry.