**In the Matter of Jeffrey L. HALE, Debtor.**

**Paul D. GILBERT, as Trustee in Bankruptcy for Jeffrey L. Hale, Plaintiff,**

v.

**GEM CITY SAVINGS ASSOCIATION, Defendant.**

**Bankruptcy No. 3–80–01317.**
**Adv. No. 3–81–0213.**

United States Bankruptcy Court,
S. D. Ohio, W. D.

Nov. 25, 1981.

Charles D. Shook, Dayton, Ohio, for defendant.

Paul D. Gilbert, Trustee, Dayton, Ohio, for plaintiff.

## DECISION

ELLIS W. KERR, Bankruptcy Judge.

### FACTS

The trustee filed a complaint against the defendant-creditor, Gem City Savings Association, seeking to recover a payment of $1,079.64 made by the debtor to the creditor on the grounds that such payment constituted a preference under 11 U.S.C. § 547.

The parties filed the following stipulations of facts:

That the defendant, Gem City Savings Association, held a valid mortgage lien on the debtor's real estate;

That within less than 90 days preceding the filing of debtor's petition in bankruptcy, debtor paid to defendant $1,079.64;

That debtor was insolvent at the time of payment;

That the $1,079.64 payment represented an arrearage of $823.64 plus a current monthly payment of $256.00;

That the value of the debtor's real estate is approximately $38,000.00;

That the outstanding balance of the loan as of May 9, 1980 (date of filing) was $24,-160.17;

That defendant's claim was fully secured both immediately before and following the payment.

The parties have submitted the matter to the Court on the basis of the stipulations of fact and accompanying memoranda of law.

### CONCLUSIONS OF LAW

§ 547(b) of the Bankruptcy Code is as follows:

"Except as provided in subsection (c) of this section, the Trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title."

The stipulations of the parties indicate that the sole issue in the instant case concerns the last requirement of a preference, i. e. did the creditor receive more than he would receive if the case were a Chapter 7 case, the transfer had not been made and the creditor received payment to the extent provided for by the provisions of Title 11.

The Trustee states the following in his memorandum:

"The test is not whether this creditor has or has not received more or less than it would have received. On this point the case of *Swarts v. Fourth National Bank*, cited in 4 Collier (15th Edition) Section 547.35 is informative. There the Court stated 'it is the effect upon the equal distribution of the estate of the (debtor) not its effect upon the creditor, that determines the preference.'"

*Swarts v. Fourth National Bank*, 117 F. 1 (8th Cir. 1902) is concerned with § 60(a) of the Bankruptcy Act of 1898. A major portion of the case is devoted to a discussion of "creditors of the same class" and the requirement that the Court examine what creditors of the same class received. It is a 13 page decision devoted for the most part to determination of preference with regard only to *allowance of claims* which, in turn, involved legal questions of indorsements, guaranty, part payment by surety, accommodation makers, and how these affect classification of claims.

Further, even *assuming* the case would apply as of that time to facts as in the instant case the enactment of the Bankruptcy Reform Act of 1978 has limited the applicability of *Swarts.* § 547(b)(5) of the Bankruptcy Code contains a significant change in the law of preferences. To find a preference under § 60(a)(1) of the Act the effect of the transfer had to enable the creditor ". . . . to obtain a greater percentage of his debt than some other creditor of the same class." Reference to "some other creditor of the same class" has been eliminated under the preference section of the Bankruptcy Code. Now the Court is required to determine whether or not the creditor has received more than he would have received if the transfer had not been made and the creditor received payment to the extent provided for in a Chapter 7 liquidation case.

To make this determination, the Court must of necessity construct a hypothetical liquidation of the debtor's estate.

■ It is of primary importance to note that in the instant case the fair market value of the collateral exceeds the creditor's claim, i. e. the creditor is *fully secured.* If the transfer to the creditor is left undisturbed, the creditor upon a Chapter 7 liquidation would receive the full value of its claim, $24,160.17 and retain the $1,079.64 previously paid to it, for a total of $25,239.81.

If the payment of $1,079.64 had not been made, the creditor's claim would be increased to $25,239.81. Again, because the creditor is fully secured, upon liquidation in a Chapter 7 it would receive the full value of its claim, $25,239.81.

It is clear, then, that the transfer did not enable the creditor to receive more than he is entitled to. With or without the transfer of $1,079.64, the creditor receives a total of $25,239.81.

■ We hold that as a general rule payments to a fully secured creditor during the 90 day period preceding the filing of bankruptcy will not be considered a preferential transfer. This rule has been announced, either explicitly or implicitly, in several other jurisdictions. [e. g. *In re Zuni*, 6 B.R. 449, 6 B.C.D. 1222 (1980); *In re McCormick*, 5 B.R. 726, 6 B.C.D. 889 (1980); *In re Hawkins Manufacturing, Inc.*, 11 B.R. 512, 7 B.C.D., 939 (1981)]

■ The underlying rationale for this rule is ". . . . that to the extent a secured creditor holding valuable collateral receives payment prior to bankruptcy, the amount of the secured claim is proportionately reduced." *In re Hawkins Manufacturing, Inc.*, supra.

In determining whether a preference exists the Court should look at ". . . . the value of the collateral, the amount of the debt, the amount of the periodic decrease in the value of the collateral and the amount of payments alleged to be a preference. As long as the combination of these factors do not result in a depletion of the debtor's estate, no preference exists." *In re Zuni*, supra.

From the above, it may appear that the interests of the general unsecured creditors have been given short shrift. A strict reading of § 547(b)(5) requires the Court to examine only the position of the creditor allegedly receiving the preferential transfer. However, an expanded analysis of the general creditors' posture reveals an additional justification for the treatment accorded the general creditors here.

In some instances the general unsecured creditors will not be harmed by the general rule announced in this case. Under certain conditions, they will suffer.

The following hypothetical situation will assist in illustrating this point:

> Debtor owns a residence valued at $50,-000. Creditor X has a mortgage lien on the property with a balance due of $40,-000 on the date of debtor's filing of bankruptcy. Debtor paid $1,000 to Creditor X during the 90-day period preceding his filing. Under state law Debtor has a $5,000 exemption in the property. The Court finds the $1,000 payment to be nonpreferential.

Under these facts the general creditors will still recover the $1,000 payment made by the debtor. It would be contained in the proceeds of sale available to general creditors, which amount to $5,000 (ignoring the expense of sale). If the Court had found the $1,000 payment to be preferential, Creditor X's claim would have increased to $41,-000. The general creditors would then receive $4,000 from the sale and the $1,000 preference recovered by the Trustee. Under these facts the general creditors are not injured by the general rule, which permits a fully secured creditor to retain payments made within 90 days of debtor's filing.

There is, however, one situation in which the general creditors will suffer a loss. Whenever the balance of the mortgage lien and the debtor's exemption equal or exceed the value of the property, the general creditors will receive nothing with regard to such property. If in the above hypothetical, the balance due on the mortgage was $45,-000, instead of $40,000, no sale proceeds would be available to the general creditors.

The party who benefits from a finding of a nonpreferential transfer in this case is the debtor. He will receive $5,000 if no preference is found, but only $4,000 if the payment is adjudged a preference. The general creditors receive nothing if a preference is not found and $1,000 if a preference exists. Is there a rationale for permitting the debtor to retain the $1,000?

The effect of the debtor's $1,000 payment in the above example is simply this: debtor has converted non-exempt property (the $1,000) into exempt property during the 90-day period preceding bankruptcy.

Under the Bankruptcy Act it was generally held that the mere conversion of non-exempt property into exempt property on the eve of bankruptcy would not prevent the debtor from claiming his exemptions. It was necessary to establish an intent to defraud in order to deprive the debtor of his exemptions. The demarcation between fraudulent and nonfraudulent transfers was blurred in this area, but the conversion in and of itself was usually not sufficient to establish fraud. [See 1–A *Collier on Bankruptcy* ¶ 6.11[5] (14th ed.); 3 *Remington on Bankruptcy* § 1278 (rev.)]

The Bankruptcy Code is silent on the issue but the legislative history supports the right of a debtor to convert non-exempt property into exempt property.

> "As under current law, the debtor will be permitted to convert non-exempted property into exempt property before filing a bankruptcy petition. *See Hearings*, pt. 3, at 1355–58. The practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled under the law." H.R. Rep.No.595, 95th Cong., 1st Sess. 360–361 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6317.

In summary, where payments are made to a fully secured creditor within the 90-day period preceding bankruptcy, a preferential transfer will generally not be found.

The rule is buttressed by two observations: (1) a fully secured creditor receives no more than he would receive had the

transfer not been made and he received payment as provided for in a Chapter 7 case [§ 547(b)(5)] and (2) the general unsecured creditors are not being treated inequitably, because the effect of the entire transaction is that of the debtor exercising his general right to convert non-exempt property into exempt property.

A different rule may be applied when the value of the collateral is less than the creditor's claim. Under § 506 of the Bankruptcy Code *undersecured* creditor has a secured claim to the extent of the value of the collateral and an unsecured claim for the remainder of his claim. It is possible that had an undersecured creditor been involved in the instant case a preferential transfer may have been found. This Court declines to formulate a specific rule involving an undersecured creditor until such issue is properly presented for adjudication.

For the reasons stated judgment must be in favor of the defendant which will be entered by separate document as required by Rule 921(a), Rules of Bankruptcy Procedure.