**In re James D. MAIN and Sharon E. Main, Debtors.**

**James D. MAIN and Sharon E. Main, Plaintiffs,**

**v.**

**Carl F. BRIM and Ora Brim; and Continental Bank Trust Company, as Trustee of the Carl F. Brim Ira Rollover Trust, Defendants.**

**CONTINENTAL BANK TRUST COMPANY, Trustee of the Carl F. Brim Ira Rollover Trust, Movants,**

**v.**

**James D. MAIN and Sharon E. Main, Debtors-In-Possession, Respondents.**

**Bankruptcy No. B–86–1582–PHX–SSC. Adv. Nos. 86–406, B.**

United States Bankruptcy Court, D. Arizona.

April 7, 1987.

Mary K. Farrington-Lorch, Law Offices of James F. Kahn, Phoenix, Ariz., for debtors.

Paul Crane, Marvin Johnson, P.C., Phoenix, Ariz., for Continental Bank/Carl F. Brim, et al.

## OPINION AND ORDER

SARAH SHARER CURLEY, Bankruptcy Judge.

On April 21, 1986, the Debtors in this consolidated adversary matter filed for relief under Title 11, United States Code, Chapter 11. On Schedule B–3 of their petition, the Debtors list an ownership interest in three parcels of real property having a reported aggregate value of $702,000. The subject properties are generally described as 5706 North Fourth Street, 315 East Montebello and 321 East Montebello, all located in Phoenix, Arizona. The first two properties are allegedly vacant land, while the latter property is alleged as the Debt-ors' residence. The only parties listed by the Debtors as having a security interest in the three parcels of real property are CARL F. BRIM ROLLOVER TRUST and CONTINENTAL BANK, the parties which are the Defendants/Movants to this consolidated adversary proceeding (the "Brim Entities"). On their statement of Affairs, Question 13, Debtors report that they owe the Brim Entities the sum of $450,000 on an installment basis.

On January 21, 1986, the Brim Entities executed a legal document entitled "Warranty Deed in Lieu of Foreclosure" which, by its terms, purported to convey all three parcels of the Debtors' real property to the Brim Entities. As stated above, the bankruptcy subsequently ensued. On July 29, 1986, the Brim Entities filed a motion for relief from the automatic stay to proceed in a forcible entry and detainer action against the Debtors. This stay relief motion was set up as an adversary action and designated Adversary "B."

On July 30, 1986, the Debtors filed a complaint against the Brim Entities to set aside the transfer and compel turnover of certain property. This complaint was designated Adversary Action 86–406–SSC. Upon motion of the Debtors, Adversary 86–406–SSC and Adversary "B" were consolidated by order dated October 21, 1986.

In Adversary "B," the Brim Entities contend that pursuant to the warranty deed executed between the parties dated January 21, 1986, the Debtors' continued possession of the residence located at 321 East Montebello, Phoenix, Arizona, is a wrongful possession of the Brim Entities' property. In Adversary Action 86–406–SSC, Debtors seek recovery of the property identified as 321 East Montebello, Phoenix, Arizona, under the alternative theories that the January 21 transfer by warranty deed is either a fraudulent conveyance pursuant to 11 U.S.C. § 548 or a preferential transfer pursuant to 11 U.S.C. § 547. The Debtors allege that the transfer of $702,000 worth of real property in exchange and extinguishment of a $450,000 debt allows the Brim Entities to receive more than they would have if the case were filed under

Chapter 7 of Title 11 (11 U.S.C. § 547). The Debtors additionally allege that they did not receive reasonably equivalent value for the transfer (11 U.S.C. § 548).

On September 2, 1986, the Brim Entities filed a motion to dismiss Adversary 86–406–SSC pursuant to *Fed.R.Bankr.P.* 7012(b) and *Fed R.Civ.P.* 12(b)(6) on the grounds that Debtors' complaint failed to state a claim upon which relief could be granted. Citing *Madrid v. Lawyers Title Insurance Corp. (In re Madrid)*, 725 F.2d 1197 (9th Cir.), *cert. denied*, 469 U.S. 833, 105 S.Ct. 125, 83 L.Ed. 66 (1984), the Brim Entities affirmatively state that as a matter of law, this court must dismiss the instant adversary complaint. At oral argument on the motion to dismiss, all parties agreed that a decision on the motion could very well be dispositive of the motion to vacate the stay. All further proceedings in this consolidated adversary were held in abeyance pending a decision by this Court, except that the parties were permitted jointly or separately to market for sale the three parcels of real property and seek court approval of any potential offers.

At oral argument on the motion to dismiss and as alleged in all of the pleadings in this consolidated matter, a dispute exists between the parties as to what transpired at the time the Debtors executed their January 21 warranty deed in lieu of foreclosure. The Debtors stated that at the time of execution of the deed, they entered into an oral joint venture arrangement or agreement with the Brim Entities that provided the Debtors could continue to reside at 321 East Montebello and share in the profits to be derived from completing the construction of a home on each of the three parcels, and sale thereof, in exchange for the Debtors completing construction of the home on the 321 East Montebello parcel, developing the two vacant parcels with residences suitable for the area, marketing all three parcels for sale to the general public, and paying rent of $2,000 per month as to the 321 East Montebello residence for the period of the joint venture agreement, with the rent to be paid solely from the proceeds to be received from the sale of said residence. The Brim Entities, however, stated that there was no oral joint venture agreement or arrangement, that the Debtors were to remain at the 321 East Montebello residence for a limited period of time while the property was on the market for sale, and that the Debtors were to pay rent pursuant to an oral agreement in the sum of $2,000 per month at the beginning of each month that they continued to reside at the house.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a) and 28 U.S.C. § 157(a). The Court finds that these consolidated adversary proceedings are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(E), (F), (G) and (H).

In ruling on this motion to dismiss, the Court shall address the following issues:

I. Whether a deed in lieu of foreclosure constitutes a "transfer" within the parameters of § 548 or § 547 of the Bankruptcy Code.

II. If this Court should determine that a "transfer" has occurred, by distinguishing the facts and law from the *Madrid* case, whether a deed in lieu of foreclosure constitutes "reasonably equivalent value" as a matter of law.

III. Whether the Debtors' complaint fails to state a claim that under any foreseeable set of facts would allow the relief requested, so that the motion to dismiss by the Brim Entities should be granted.

### DISCUSSION

The threshold issue for consideration by this Court is whether the Debtors conveyed an interest in any property at the time that they conveyed the three parcels of real property to the Brim Entities pursuant to the January 21 warranty deed. The elements of a fraudulent transfer under Section 548 of the Bankruptcy Code require that such a "transfer" occur. In the *Madrid* decision of the Ninth Circuit, *supra*, the court held that the obtainment and perfection of a security interest under state law was the only "transfer" that occurred. The subsequent foreclosure of that security interest through a sale was not deemed a "transfer." Although the Ninth Circuit

reversed the Bankruptcy Appellate Panel decision in *Madrid,*[1] the Bankruptcy Appellate Panel essentially had attempted to go a step further by finding that although a transfer may have occurred for purposes of Section 548, another essential element of that Section required that the Debtor not receive "reasonably equivalent value." The Bankruptcy Appellate Panel found as a matter of law that a noncollusive, regularly conducted, nonjudicial foreclosure sale established reasonably equivalent value for purposes of Section 548. A number of courts subsequently followed the Ninth Circuit *Madrid* analysis, believing that the more narrow definition of transfer under Section 548 was appropriate. The courts generally held that the foreclosure sale was an involuntary conveyance triggered by the debtor's failure to comply with the terms and conditions of the underlying mortgage note or the agreement serving as security for said note, thereby resulting in the involuntary transfer back to the secured creditor of the debtor's interest in certain real property. Although the concept of "transfer" has arguably always been very broadly defined under Section 548, the courts following the Ninth Circuit *Madrid* decision have adopted the position that an involuntary transfer through a foreclosure sale is somehow not contemplated. See *In re William,* 39 B.R. 678 (D.Minn.1984); *In re Strauser,* 40 B.R. 868 (Bankr.N.D.Ohio 1984).

A dichotomy in the Circuits was created after the rendering of the *Madrid* decision.

Previously in *Durrett v. Washington Nat'l Ins. Co.,*[2] the Fifth Circuit held that the definition of transfer under the prior Bankruptcy Law included voluntary and *involuntary* transfers of the debtor's interest in real property and that the debtor's loss or foreclosure of its equity of redemption on the eve of bankruptcy should be scrutinized as closely as any voluntary transfer. The Fifth Circuit continued to follow this concept of involuntary transfers as fraudulent conveyances in the subsequent decision of *Abramson v. Lakewood Bank & Trust Co.*[3] In *Abramson,* however, Judge Clark noted a vigorous dissent, recognizing that such decisions as *Durrett* and its progeny were beginning to cast a cloud upon the finality of *all* nonjudicial foreclosure sales, which might from a policy standpoint be inappropriate. Without finality, prices could be depressed further at foreclosure sale, and inhibit third parties from bidding at such sales.[4]

The Debtors in this proceeding, however, filed their Chapter 11 petition after the effective date of the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA"). Whether Congress acted intentionally or inadvertently to overrule the Ninth Circuit decision of *Madrid* is not dispositive of the issues now before this Court. The *effect* of BAFJA as to Sections 548 and 101(48) of the Code is to overrule *Madrid.*[5] *In re Verna,* 58 B.R. 246, 250–51 (Bankr.C.D.Cal.1986); *In re Bundles,* 61 B.R. 929 (Bankr.S.D.Ind.1986).

**1.** *In re Madrid,* 21 B.R. 424 (Bankr. 9th Cir. 1982).

**2.** (*In Re Durrett* ), 621 F.2d 201 (5th Cir.1980).

**3.** 647 F.2d 547 (5th Cir.1981), *cert. denied* 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1982).

**4.** This Court could discuss at length the case law that developed under the Bankruptcy Code in support of the *Durrett* analysis. Generally the courts held that Section 548(d)(1) defined transfer for purposes of *when* a transfer might occur. However, the concept of transfer was broadbased, and a debtor's interest in real property might involve a series of transfers. Prior to the effective date of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Section 548(a) had read "The trustee may avoid *any transfer* (emphasis added) of an interest of the debtor in property ..." See *Hulm v. First Feder-*

*al Savings (In re Hulm),* 738 F.2d 323, 325 (8th Cir.), *cert. denied,* 469 U.S. 990, 105 S.Ct. 398, 83 L.Ed.2d 331 (1984).

**5.** At oral argument on this matter, counsel for the Brim Entities relied on *Matter of Winshall Settlor's Trust,* 785 F.2d 1136 (6th Cir.1985) as further support for its argument that no transfer had occurred under Section 548. However, this Court believes that Section 548(d)(1) of the Code is not the dispositive provision as to whether a transfer has occurred; rather, Sections 101(48) and 548(a) of the Code must be analyzed. In any event, the *Winshall* court was primarily focusing on whether a regularly conducted, nonjudicial foreclosure sale should be set aside on the basis that reasonably equivalent value had not been received.

▬ This Court is not stating or implying that the initial obtainment and perfection of the security interest is now subject to avoidance under Section 548. The time and method of perfection of an interest in real property is determined pursuant to state law. Ninth Circuit *Madrid* decision, *supra* at 1200; *Evans v. Valley West Shopping Ctr., Inc.*, 567 F.2d 358, 360 (9th Cir.1978). Under Arizona law, the Brim Entities obtained a lien on the subject real property initially as security for the repayment of the indebtedness due and owing by the Debtors. The Brim Entities utilized a deed of trust as the mechanism to obtain the lien. A.R.S. §§ 33–401, *et seq.*; A.R.S. §§ 33–801, *et seq.* However, with the revision of Sections 548 and 101(48), *all* transfers within the applicable time period must be examined by this Court. When the lien was obtained and perfected is not the only relevant transfer to be examined. This Court finds that the January 21 warranty deed is a "transfer" within the parameters of Section 548.

Whether the other elements under Section 548 have been met shall be left for an evidentiary hearing before this Court. At oral argument, the Brim Entities stated that the January 21 warranty deed should be considered a "deed in lieu of foreclosure," and an appropriate method to foreclose the Debtors' interest in the subject property under Arizona law.

▬ Under Arizona law, a deed in lieu of foreclosure is not a creature of statute, but is an accord and satisfaction. *Bickart v. Greater Arizona Savings & Loan Ass'n*, 103 Ariz. 166, 438 P.2d 403 (1968); *Martino v. Frumkin*, 11 Ariz.App. 160, 462 P.2d 853, 857 (1969). An oral agreement is sufficient to satisfy a written obligation. *Western Savings & Loan v. Diamond Lazy K Ranch*, 18 Ariz.App. 256, 501 P.2d 432, 439 (1972). The Debtors have alleged that an oral agreement in the nature of a joint venture was entered into with the Brim Entities, whereby the Debtors would finish construction of the residence in which they lived, assist in the development of the two parcels of vacant land, and market all of the subject real property for

sale. In return, at the time of sale, the Debtors allegedly were to pay, in one lump sum payment, rent for the period of time in which they resided in the residence and share in the net proceeds received from the sale of the real property after deduction of all expenses associated therewith, including the rent. An open issue is whether the Debtors may introduce evidence as to the oral joint venture agreement. The parol evidence rule would prohibit the introduction of such evidence, unless "an ambiguity exists on the face of the document or the language admits of differing interpretation ..." *Standage Ventures, Inc. v. State*, 114 Ariz. 480, 562 P.2d 360, 362 (1977). However, the parties have not had an opportunity to brief this legal issue. Moreover, this Court should hold an evidentiary hearing on this matter at a minimum to determine whether the Debtors received reasonably equivalent value at the time they transferred the equity, if any, in the subject real property in satisfaction of the indebtedness due and owing by them to the Brim Entities.

▬ To the extent that the Debtors have urged this Court to consider a potential claim against the Brim Entities pursuant to Section 547 of the Bankruptcy Code, such a matter will also be set for an evidentiary hearing. The enforcement of a lien by a fully secured creditor on the eve of bankruptcy has been held in numerous cases not to be a preferential transfer. e.g. *In re Santoro Excavating, Inc.*, 10 B.C.D. 1369, 32 B.R. 947 (Bankr.S.D.N.Y. 1983); *In re Hale*, 8 B.C.D. 434, 15 B.R. 565 (Bankr.S.D.Ohio 1981); *In re Conn*, 9 B.R. 431 (Bankr.N.D.Ohio 1981). Although the Ninth Circuit *Madrid* court, in *dicta*, stated that Section 547 was inapplicable to foreclosure sales because *no transfer* had occurred, a review of the cases would indicate that it was because creditors with fully secured claims did not receive more than they would under a Chapter 7 liquidation if the transfer had not been made, and if such creditor had received payments pursuant to the provisions of Chapter 7. *Santoro, supra; Hale, supra.* The fully secured creditor would always retain its right to foreclose. However, it has also

been held that to the extent a creditor has a partially secured and unsecured claim and receives payments on that claim within the ninety-day period prior to the filing of the bankruptcy petition, any payment received by said creditor must first be charged to the unsecured portion of the claim. Such a procedure would probably dictate that a creditor in most cases would receive more than it would under Chapter 7 of the Code. *Barash v. Public Finance Corp. (In re Barash),* 658 F.2d 504 (7th Cir.1981). A motion to dismiss is not the appropriate procedure to determine whether the Brim Entities are a fully secured creditor. What is ironic is that the Brim Entities have argued that the subject real property does not have the value ascribed to it by the Debtors. That may very well be true. However, to the extent that the collateral is worth substantially less, it only gives merit to the Debtors' allegations that a preferential transfer has occurred. This Court finds that a transfer has occurred within the parameters of Section 547 of the Bankruptcy Code, and that an evidentiary hearing must be scheduled to determine whether the other elements of a preferential transfer have been met.

Another argument urged by the Brim Entities is that even if a transfer has occurred, the Debtors received reasonably equivalent value at the time of the January 21 warranty deed. This Court believes that it can summarily dispose of this issue at this time. Although not stated in the Ninth Circuit *Madrid* decision, this Court believes that the Ninth Circuit was concerned about setting aside a foreclosure sale to a third party concerning a valid lien that had already been enforced. Essentially the Court was asked to set aside the sale to a bona fide purchaser that had occurred *prior* to the commencement of the bankruptcy proceedings. Moreover, the Bankruptcy Appellate Panel *Madrid* decision was also concerned about the rights of third parties, which prompted that court to hold as a matter of law that regularly conducted, noncollusive foreclosure sales should be deemed reasonably equivalent value received by the debtor and, hence, not a fraudulent conveyance. In this pro-

ceeding, however, no third parties were given an opportunity to bid on the real property, and the Debtors were not afforded the opportunity to obtain the highest possible offer or bid for the real property. Without that opportunity to bid at a noncollusive, regularly conducted foreclose sale or an evidentiary hearing to determine the value of the property at the time of the transfer as a result of an evidentiary hearing, this Court will not conclude as a matter of law that reasonably equivalent value has been received by the Debtors. If the Debtors prove their allegations that a joint venture existed between the Debtors and the Brim Entities, the Brim Entities will have the responsibility to account to the Debtors for their actions and to maximize the sale of the subject real property, since as joint venturers, the Brim Entities will be deemed acting in a fiduciary capacity. In effect, this claim as to a joint venture may afford the Debtors an additional theory upon which to recover if that fiduciary duty to account or maximize the proceeds from the sale of the real property has been breached. *Sparks v. Republic National Life Insurance Company,* 132 Ariz. 529, 647 P.2d 1127, *cert. denied* 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed. 632 (1982).

*Boddicker v. Arizona State Dental Ass'n,* 549 F.2d 626, 632 (9th Cir.1977), dictates that a complaint not be dismissed for a failure to state a claim upon which relief may be granted *unless* "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." (Quoting *Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976)). Based upon the foregoing analysis, it is possible at an evidentiary hearing that the Debtors will prove their case by a preponderance of the evidence. A motion to dismiss is, therefore, improvident.

IT IS, THEREFORE, ORDERED that the Brim Entities' motion to dismiss is denied.

Pursuant to *Fed.R.Civ.P.* 52, as adopted by *Fed.R.Bankr.P.* 7052, this Opinion and Order shall constitute findings of fact and

conclusions of law in support of this decision.