**In re Warne EHRING, Debtor.**

**Warne EHRING, Appellant,**

v.

**WESTERN COMMUNITY MONEYCENTER, a corporation, and Franklin Tom, Commissioner of Corporations, State of California, as Liquidator of Western Community Moneycenter, Appellees.**

**BAP No. CC–86–1170–MeMoJ.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted July 22, 1987.

Decided Sept. 22, 1988.

Earle Hagen, Hagen & Hagen, Encino, Cal., for appellant.

Lawrence M. Jacobsen, Jeffer, Mangels & Butler, Los Angeles, Cal., for appellees.

Before MEYERS, MOOREMAN and JONES, Bankruptcy Judges.

## OPINION

MEYERS, Bankruptcy Judge:

### I

This case involves a pre-petition foreclosure sale of the Debtor's real property. The Debtor brought a preference action under Section 547 of the Bankruptcy Code ("Code"), alleging that the transfer of the property occurred within 90 days of bankruptcy. The Bankruptcy Court found there was no preference and the Debtor now appeals. The issue presented is whether the transfer occurred when the creditor perfected its security interest or at the time of the foreclosure sale. Because we find that the transfer occurred at the time the security interest was perfected, we AFFIRM.

### II

### BACKGROUND

On March 2, 1983, the Debtor borrowed $145,000 from Coast Home Loans in exchange for a promissory note secured by a second deed of trust. The next day, Coast Home Loans assigned its trust deed to Western Community Moneycenter ("Western"). Western recorded its deed of trust on March 15, 1983.

The Debtor defaulted on his note payments, causing Western to foreclose on the property. Western held a valid foreclosure sale on February 22, 1985 and purchased the property for $199,746.41, the amount of the indebtedness, which was secured by a deed of trust in the second position. This transaction was recorded on March 21, 1985.

On April 18, 1985, Western resold the subject property to Gary Miller and Margaret Reid Miller for $390,000, which was the approximate total fair market value of the property, with escrow closing in July 1985.

On May 21, 1985, less than 90 days after the initial foreclosure sale, the Debtor filed a bankruptcy petition under Chapter 11. He thereafter commenced an action against Western under Section 547 of the Code, claiming that the foreclosure sale and the subsequent resale to the Millers constituted a voidable preference. In his complaint the Debtor prayed for $110,000, which represented the amount that the sales price to

the Millers exceeded the sums owed on the first and second deeds of trust. The Bankruptcy Court granted summary judgment for Western finding no preference in either the foreclosure sale or the resale.

## III

### DISCUSSION

Section 547 of the Code authorizes the bankruptcy trustee to avoid certain "preferential transfers" by the debtor to creditors within a fixed period prior to the filing of the petition. 11 U.S.C. § 547. The purpose of this section is to discourage creditors from "racing to the courthouse to dismember the debtor during his slide into bankruptcy" and "to facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor." *Matter of Vance,* 721 F.2d 259, 260 (9th Cir. 1983). In addition, the provision is intended to discourage the imposition of secret liens upon the debtor's collateral which are not perfected until just before the debtor files for bankruptcy, as other creditors might extend credit on the assumption that the collateral was free and clear. *In re Gulino,* 779 F.2d 546, 549 (9th Cir.1985).

In order to establish a voidable preference, the trustee must prove seven elements set out in 11 U.S.C. § 547(b). There must be: (1) a transfer; (2) of the debtor's property; (3) to or for the benefit of a creditor; (4) for or on account of an antecedent debt; (5) made while the debtor was insolvent; (6) within 90 days before the original filing of the petition; (7) which enables the creditor to receive more than he would receive under a Chapter 7 liquidation. *In re Gulino, supra,* 779 F.2d at 549.

The present case involves a dispute over the date of the transfer. If the transfer of property occurred when Western perfected its security interest under state law, then it clearly would fall outside the preference period. On the other hand, a transfer occurring at the time of the foreclosure sale would fall within the preference period.

Generally, the Code defines "transfer" broadly under Section 101(50):

> [T]ransfer means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest *and foreclosure of the debtor's equity of redemption.*

11 U.S.C. § 101(50) (emphasis added).

The definition of when a transfer occurs is set forth in Section 547(e)(2) which states:

> For purposes of this section ... a transfer is made
>
> (A) At the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time; [or]
>
> (B) At the time such transfer is perfected, if such transfer is perfected after such 10 days[.]

11 U.S.C. § 547(e)(2). Consequently, establishing the date on which a transfer was made requires a preliminary determination of when the transfer was perfected under state law. *In re Gulino, supra,* 779 F.2d at 549.

### A. *Applicability of Madrid*

The Ninth Circuit has held that for purposes of Section 548, a transfer of real property occurs at the time the creditor's security interest is perfected, as opposed to the time of the subsequent foreclosure sale. *In re Madrid,* 725 F.2d 1197, 1200–01 (9th Cir.1984). Thus, where the perfection occurs more than one year prior to the date of bankruptcy, the transfer is not avoidable as a fraudulent conveyance under Section 548. 725 F.2d at 1201. The Court rejected an earlier contrary decision by the Fifth Circuit which ruled that the transfer occurs at the time of the foreclosure sale. *See Durrett v. Washington Nat. Ins. Co.,* 621 F.2d 201, 204 (5th Cir. 1980).

The issue presented before this Panel is whether *Madrid*'s interpretation as to the time of the transfer applies to the present case. The Debtor first argues that because the present case falls under Section 547, *Madrid* should not apply.

We find the interpretation of when a transfer occurs in *Madrid* to be applicable to the present case. Although *Madrid* involved Section 548, the Code provisions regarding fraudulent transfers, and while this appeal involves allegedly voidable preferences under Section 547, both sections define the time of transfer in relation to when the transaction is perfected under state law against the interests of a bona fide purchaser. In addition, the *Madrid* court specifically stated that its holding was consistent with the treatment of similar transfers under Section 547. 725 F.2d at 1201 n. 2. The Panel is not free to disregard such a clear statement from the Ninth Circuit on this issue. *See Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir.1987); *Hasbrouck v. Texaco, Inc.*, 663 F.2d 930, 933 (9th Cir.1981).

In the present case then, the transfer of the real property interest occurred when Western perfected its interest under state law. 725 F.2d at 1200-01. *See also In re Cardinal Enters.*, 68 B.R. 460, 462 (9th Cir. BAP 1986), *aff'd* 844 F.2d 791 (9th Cir.1988) (Table). In California, perfection of a deed of trust occurs upon the recordation of the document with the county recorder. Cal.Civ.Code § 1213. Since Western recorded its deed of trust and therefore perfected its interest in March 1983, the transfer should be deemed to have occurred at that date. This transfer clearly falls outside the 90-day preference period and so is not voidable under Section 547. *See In re Lewis W. Shurtleff, Inc.*, 778 F.2d 1416, 1420 (9th Cir.1985).

### B. *The 1984 Amendments*

The Debtor next claims that the 1984 Bankruptcy Amendments and Federal Judgeship Act ("1984 Amendments"), which expanded the definition of "transfer" in Section 101(50), intended to overrule *Madrid* in favor of the result reached in *Durrett*. The issue of whether Congress intended to overrule *Madrid* by these amendments has arisen with no clear an-

swer. *See In re Cardinal Enters., supra,* 68 B.R. at 462.

The 1984 Amendments were originally drafted with three changes to the Code specifically aimed at resolving the *Madrid/Durrett* dispute. First, the definition of "transfer" in Section 101 was expanded expressly to include foreclosure of a debtor's equity of redemption. 11 U.S.C. § 101(50). Second, Congress altered Section 548 so that both voluntary and involuntary transfers could qualify as fraudulent transfers. 11 U.S.C. § 548(a). Third, it was proposed that there be an irrebuttable presumption of "reasonably equivalent value" to any party who purchased mortgaged property at a regularly conducted non-collusive foreclosure sale for a price equal to the full amount of the mortgaged debt.[1] *See In re Verna*, 58 B.R. 246, 250 (C.Cal. 1986).

However, before these changes were enacted, there was a dispute in Congress over whether the Amendments should attempt to resolve the *Madrid/Durrett* issue. *See In re Verna, supra,* 58 B.R. at 250. Senators Dole and DeConcini inserted into the record a colloquy indicating that Congress did not intend to resolve the dispute over the two cases. 58 B.R. at 250. The final bill enacted the first two changes outlined above, but for some unannounced reason deleted the third provision. As a result, Congress' intent is not clear.

No changes of law or policy are to be interpreted from changes of language in the revision of a statute unless the intent to make a change is clearly expressed. *Muniz v. Hoffman*, 422 U.S. 454, 472, 95 S.Ct. 2178, 2188, 45 L.Ed.2d 319 (1975); *Tidewater Oil Co. v. United States*, 409 U.S. 151, 162, 93 S.Ct. 408, 415, 34 L.Ed.2d 375 (1972). Only where the plain language of the amendment works a clear change in former law should new interpretations be given effect. *United States v. California*, 328 F.2d 729, 737 (9th Cir.1964).

Courts interpreting the 1984 Amendments with respect to Section 547 have

---

1. This in essence would have adopted the Panel's position in the *Madrid* case. *In re Madrid,*

21 B.R. 424, 427 (9th Cir. BAP 1982).

reached mixed results. Some courts have found that the changes overrule *Madrid* and ratify the *Durrett* approach. *In re Main,* 75 B.R. 322, 325 (Ariz.1987); *In re Pruitt,* 72 B.R. 436, 442 (E.N.Y.1987); *In re Verna, supra,* 58 B.R. at 251. These courts reason that although Congress may not have intended this result, the legislation as enacted mandates such a reading. *In re Verna, supra,* 58 B.R. 251.

However, we agree with those courts which have found that *Madrid* is still valid law. *See In re Winshall Settlor's Trust,* 758 F.2d 1136, 1138–39 n. 3 (6th Cir.1985); *Lower Downtown Assocs. v. Brazosbanc Sav. Ass.,* 52 B.R. 662, 665 (Colo.1985). On its face, the amendment to Section 101(50) does not clearly express an intent to overrule *Madrid.* Congress altered the definition of "transfer" found in Section 101(50) to specifically include the "foreclosure of the debtor's equity of redemption." However, we note that the *Madrid* court relied on Section 548(a) itself for its holding that the "transfer" in question occurs when the lien is perfected rather than when the foreclosure sale takes place. *Matter of Winshall Settlor's Trust, supra,* 758 F.2d at 1138–39. *See also* Comment, *Avoidance of Foreclosure Sales As Fraudulent Transfers Under Section 548(a) of the Bankruptcy Code,* 66 Neb.L.Rev. 384, 397, 399 (1987). In *Madrid,* the Ninth Circuit noted that their holding was in accord with cases decided under Section 547. 725 F.2d at 1201 n. 2. The 1984 Amendments did not change Sections 547 and 548 in any way which would undermine the Ninth Circuit's reliance on those sections concerning the *time* that transfers take place.

The Congress did amend Section 548(d) by adding the phrase "voluntarily or involuntarily." This change addressed only the concern of Judge Farris, who concurred in *Madrid.* We, therefore, conclude that the changes enacted by the 1984 Amendments do not weaken the interpretation of the *Madrid* court which regarded the rest of Section 548(d)(1) as determinative of when a transfer of a secured interest occurred. *In re Winshall Settlor's Trust, supra,* 758 F.2d at 1138–39 n. 3.

Referring then to the legislative history, we see that Congress was clearly aware of the *Madrid/Durrett* dichotomy. However, the enactment of only two of the three proposed amendments coupled with Congress' indecision and conflicting statements demonstrate that there was no clear-cut resolution on this issue. Absent a clear mandate from Congress via either the wording of the 1984 Amendments or the legislative record, courts within the Ninth Circuit are bound to continue to uphold the decision of *Madrid* regarding the time of transfer.

■ The Debtor claims that a finding of no preference results in a windfall for Western who resold the property to the Millers at its fair market value. This argument, which essentially challenges the adequacy of the foreclosure sale price, should properly be challenged under Section 548 as a fraudulent transfer. *See e.g., In re Winshall Settlor's Trust, supra,* 758 F.2d at 1137. Even assuming this argument was properly raised before this Panel, we find no windfall where the property is sold at the lien value in a non-collusive regularly held foreclosure sale. *See In re Verna, supra,* 58 B.R. at 252; *Golden v. Tomiyasu,* 387 P.2d 989, 995 (Nev.1963). Western should not be penalized for subsequently using the purchased property to its benefit and the resale of the property at its fair market value violates no Code purposes.

The Code contemplates that the determination of when a transfer occurs should depend at least in part on state law. *See In re Gulino, supra* 779 F.2d at 549–50; 4 *Collier on Bankruptcy* ¶ 547.16[2] at 547–60. Yet if the Code is now read, as the Debtor suggests, so that a transfer occurs at the time of the foreclosure sale, then the state law regarding perfection of the security interest becomes irrelevant. Federal law, which states through Section 101(50) *what* a transfer is, will have displaced state law as to *when* the transfer takes place. The 1984 Amendments demonstrate no legislative intent to reduce the importance of state law in calculating the time of the transfer.

The transfer of the Debtor's property occurred in March 1983 on the date Western perfected its security interest. As this falls outside the 90–day preference period, it is not voidable under Section 547.

AFFIRMED.

JONES, Bankruptcy Judge, concurring.

I agree with the conclusion of the lead opinion that the transfer in the instant case does not constitute a voidable preference under § 547. However, my conclusion is based upon a different analysis. In my view, it is unnecessary to address the questions of whether the 1984 amendments to the Bankruptcy Code overruled *Madrid* or whether *Madrid* applies to § 547, because even assuming for purposes of argument that the foreclosure sale was a transfer, I would conclude that the elements of a preference are not present here.

The Debtor apparently argues that the foreclosure sale and the subsequent sale to the Millers should be treated as a single transfer. I disagree. The two transactions were separate and there is no basis for treating them as a single transfer. I therefore would analyze each sale separately.

With respect to the foreclosure sale, the first six elements of a preference are present (again assuming *arguendo* that the foreclosure sale was a transfer). However, the seventh element is not satisfied. This element, the "greater amount" test, "requires a comparison of the amount a creditor would receive in a hypothetical Chapter 7 distribution were the transfer disallowed with the amount the contested transfer, if allowed, would actually enable the creditor to receive." *In re Lewis W. Shurtleff, Inc.*, 778 F.2d 1416, 1423 (9th Cir.1985). Here, Western clearly was substantially oversecured. As a result, it would have received full payment even if the sale was avoided and the property was liquidated as part of the estate. At the foreclosure, Western made a credit bid in the full amount it was owed by the Debtor. This was not a preference because a transfer to a fully secured creditor "only reduces secured debt and does not enable the secured party to receive more than in a Chapter 7 liquidation." *In re Joe Flynn Rare Coins, Inc.*, 81 B.R. 1009, 1019 (Bankr.D.Kan. 1988); *see In re Auto–Train Corp.*, 49 B.R. 605, 610 (D.C.1985), *aff'd sub nom. Drabkin v. A.I. Credit Corp.*, 800 F.2d 1153 (D.C.Cir.1986); Countryman, *The Concept of a Voidable Preference in Bankruptcy*, 38 Vand.L.Rev. 713, 742–743 (1985). Western, therefore, did not receive more than it would have realized in a Chapter 7 liquidation and the foreclosure sale was not a preference.

Western's subsequent sale of the property to the Millers also was not a preference. The second element of a preference is that the transfer involve an interest of the debtor in property. After the foreclosure sale which, as discussed above, was not avoidable, the property was no longer property of the Debtor. The transfer, therefore, was not "a transfer of an interest of the debtor in property" and could not be a preference.[1] Accordingly, I too would affirm the bankruptcy court's decision, but for a reason different than that expressed in the lead opinion.

The dissent advocates the adoption of a rule allowing the estate to recover a windfall from a foreclosing creditor under § 547. I agree that such a rule might be consistent with the purpose and spirit of the Bankruptcy Code in that it furthers the goal of equality of distribution among creditors. However, the application of such a rule would require this Panel to find that a transfer occurred at the foreclosure sale, which in turn would require us to hold that *Madrid* is no longer good law. This I am unwilling to do until such time as Congress

1. Assuming, *arguendo*, that *Madrid* has been legislatively overruled, the foreclosure sale might be amenable to a fraudulent conveyance argument under Bankruptcy Code § 548. If such were the case, the amount received by the creditor upon the subsequent resale of the property would go to the issue of whether the debtor received "reasonably equivalent value" for the transfer within the meaning of § 548. However, that issue has not been presented in this appeal.

or the Ninth Circuit makes clear that *Madrid* should no longer be followed.

MOOREMAN, Bankruptcy Judge, dissenting.

It is well recognized that one of the primary purposes behind the establishment of the Bankruptcy Code was to provide a means to marshal a debtor's assets and allow for the ratable distribution among all creditors. *E.g. Morgan Guaranty Trust Co. v. American Savings and Loan*, 804 F.2d 1487, 1496 (9th Cir.1986); *In re North American Coin & Currency, Ltd.*, 767 F.2d 1573, 1575 (9th Cir.1985); *In re Lewis W. Shurtleff, Inc.*, 778 F.2d 1416, 1420 (9th Cir.1985). Equally well recognized rules of statutory construction require federal courts to apply specific legislation in a manner consistent with the purpose of such legislation as well as the statutory language itself. *E.g. Watt v. Alaska*, 451 U.S. 259, 265–66, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981); *In re Victoria Station Inc.*, 88 B.R. 231, 235 (9th Cir. BAP 1988).

In order to further the Bankruptcy Code's purpose of ratable distribution to all creditors, the Bankruptcy Code provides two remedial sections whereby certain prepetition transfers of the debtor's property can be set aside and the property brought back into the estate. 11 U.S.C. §§ 547 and 548. Although the foreclosure sale in the instant case may be valid under state law, the Supremacy Clause makes such proceedings subject to sections 547 and 548. *See Matter of McVey Trucking, Inc.*, 812 F.2d 311 (7th Cir.1987).

The instant case specifically involves a preference action brought pursuant to 11 U.S.C. § 547. The majority disposition gives rise to two issues: first, whether the Bankruptcy Amendments and Federal Judgeship Act of 1984 (BAFJA) effectively overrule the Ninth Circuit Court of Appeals' decision in *In re Madrid*, 725 F.2d 1197 (9th Cir.1984); and second, whether the "greater amount" requirement of § 547 was satisfied in the instant case.

In determining whether BAFJA overrules the Ninth Circuit's decision in *In re Madrid*, this Judge is compelled to follow recognized notions of statutory interpretation by applying the plain meaning of the statutory language. *E.g. Watt v. Alaska*, 451 U.S. 259, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981). The Bankruptcy Amendments and Federal Judgeship Act of 1984 modified the bankruptcy code's definition of "transfer" to expressly include the "foreclosure of the debtor's equity of redemption." 11 U.S.C. § 101(50). In this regard I am inclined to adopt the view that the ultimate effect of BAFJA was to overrule *Madrid*. *E.g. In re Verna*, 58 B.R. 246, 250–51 (Bankr.C.D. Cal.1986); *In re Main*, 75 B.R. 322, 325 (Bankr.D.Ariz.1987); *In re Staples*, 87 B.R. 645, 646 (Bankr.D.Or.1988); and cases cited therein. To hold otherwise would be to interpret the express statutory language in a manner inconsistent with the purpose of the bankruptcy code.

Turning to the issue of whether the "greater amount" test of 11 U.S.C. § 547(b)(5) was satisfied, the Ninth Circuit has recognized that a "creditor [against whom a preference action is brought] must be charged with the value of what was transferred...." *In re Lewis W. Shurtleff, Inc.*, 778 F.2d at 1421. In the instant case, *the fair market value* of the property at the time of the foreclosure sale is not apparent from the record. However, the purchasing creditor at the foreclosure sale realized a $110,000 increase in a subsequent sale less than two months later.[1] Undoubtedly, the value of the property transferred at the foreclosure sale was greater than the amount the creditor/appellee would have received in a liquidation. Under such circumstances, to allow the creditor to retain a windfall at the expense of other creditors would allow for a result inconsistent with the purpose of the Bankruptcy Code. *See e.g. Morgan Guaranty and Trust Co.*, 804 F.2d at 1496 (recognizing that the "goal of equality of treatment"

---

1. While it should be followed that a regularly conducted non-collusive foreclosure sale creates a "strong presumption" of fair market value (*see*

*In re Staples, supra*), the facts of the instant case appear to be sufficient to rebut such a presumption.

would be furthered by preventing a creditor from retaining certain windfalls).

Accordingly, I would remand the case for a determination of the value of the property at the time of the foreclosure sale, as well as costs incurred.[2]

---

**2.** It is important to note that a rule allowing the estate to recover a resulting windfall from a foreclosing creditor would not infringe upon the recognized policy to avoid impairment of the marketability of foreclosed properties. Allowing the avoidance of a transfer *only* to the extent of recovering such a windfall from a foreclosing creditor, would in no way cloud the title of any subsequent purchasers or raise any

of the concerns discussed in the *Madrid* case and would more appropriately further the purpose of the bankruptcy code.