**In re Seyeid KACHANIZADEH, Debtor.**

**Seyeid KACHANIZADEH, Plaintiff,**

**v.**

**Ralph W. DENLINGER, et al., Defendant.**

**Bankruptcy No. SA 89–04519 JR.**

**Adv. No. SA 89–0808 JR.**

United States Bankruptcy Court, C.D. California.

Dec. 12, 1989.

Phillip R. Kimes, Newport Beach, Cal., for debtor.

Ronn A. Pisapia, Pasadena, Cal., for Home Sav. and Loan Ass'n.

Michael J. Migan, Santa Ana, Cal., for Ralph W. Denlinger, et al.

MEMORANDUM OPINION

JOHN E. RYAN, Bankruptcy Judge.

Debtor seeks to set aside a foreclosure sale using § 548 of the Bankruptcy Code. In order to maintain the status quo until a trial on the merits, debtor requests a preliminary injunction to prevent defendants from transferring or encumbering the foreclosed property (the "Property"). The Property was the residence of debtor be-

fore debtor and his family were evicted pursuant to a unlawful detainer judgment and writ of possession issued by the Orange County Superior Court. On September 11, 1989, based upon an ex-parte application, I granted a temporary restraining order and issued an order to show cause on debtor's request for a preliminary injunction. On September 21, 1989, I held the preliminary injunction hearing and took the matter under submission to resolve conflicting bankruptcy court decisions in this circuit relating to the appropriate test to use when deciding if under § 548 reasonably equivalent value is received at a foreclosure sale conducted in accordance with state law.

## JURISDICTION

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(a) (the district courts shall have original and exclusive jurisdiction of all cases under Title 11), 28 U.S.C. § 157(a) (authorizing the district courts to refer all Title 11 cases and proceedings to the bankruptcy judges for the district) and General Order No. 266, dated October 9, 1984 (referring all Title 11 cases and proceedings to the bankruptcy judges for the Central District of California). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H).

## STATEMENT OF FACTS

On July 19, 1989, debtor filed his Chapter 11 petition. This was not debtor's first experience with bankruptcy. Rather, he had earlier filed a Chapter 13 that was later dismissed on December 10, 1987. Shortly thereafter, on January 6, 1988, he filed a second Chapter 13 case. During that second Chapter 13, in April 1988, debtor entered into a stipulation with Home Savings of America, F.A. ("Home Savings") for relief from stay. When debtor failed to comply with the payment requirements under the stipulation, Home Savings obtained an order from this court allowing it to proceed to foreclosure. On September 16, 1988, the Property was sold through foreclosure to defendants who obtained title to the Property by a trustee's deed upon sale, dated September 21, 1988. That deed was recorded on September 28, 1988. The purchase price was $170,972.03. On August 28, 1989, the marshal removed debtor and his family from the Property.

Serrano Reconveyance Company ("Serrano"), the trustee acting for Home Savings, postponed the foreclosure sale on 16 occasions from May 8, 1987 to August 5, 1988. From Serrano's records, it is clear that no efforts were made to publicize the foreclosure sale other than publishing the notice of sale three times in accordance with California law. Each time the sale was postponed, the new date of sale was given. Debtor does not allege that the foreclosure sale was invalid under California law.

According to debtor's appraiser, the value of the Property on September 27, 1988 was $275,000. Responding to this valuation, defendants assert that on September 17, 1988 debtor admitted that the value of the Property was approximately $240,000. Debtor also had earlier filed bankruptcy schedules in his Chapter 13 listing the value of the Property at $200,000. Debtor's wife in her bankruptcy schedules set the value of the Property at $200,000. Admittedly, at the time debtor's wife filed her schedules, she and debtor had a copy of their appraiser's report setting the value at $275,000. Defendants had the Property appraised as of September 1988 at $250,000. At the preliminary injunction hearing, the custodian of the records of Serrano testified that Serrano's appraiser set the value of the Property as of July 8, 1988 at $240,000. Based upon the evidence, I find that the fair market value of the Property at the time of the foreclosure sale was $240,000.

## DISCUSSION

In order to prevail on its motion for preliminary injunction, debtor must show probability of success on the merits and irreparable injury. In addition, he must demonstrate that the balance of hardship tips in his favor. *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir.1983). Debtor argues that if the preliminary injunction is

not granted, the Property can be transferred to a bona fide purchaser, thereby cutting off debtor's right to have the Property revert to him. This would irreparably harm debtor as he would lose his right to live in his residence. Money damages would not be an adequate substitute. By maintaining the status quo until his complaint is heard, this risk is removed. The hardship for defendants is that they cannot sell the Property. However, they can rent it and generate income to offset their expenses and once the litigation is resolved, if they prevail, they will then be able to market and sell the Property which appears to be their goal. Weighing these considerations, the balance of hardships favors debtor.

This leaves the issue of probability of success. Resolution of this issue depends primarily on whether debtor can establish that less than reasonably equivalent value was given in exchange for the Property at the foreclosure sale. Section 548(a) provides in part that a trustee in bankruptcy may avoid a transfer within one year of the filing of the petition if the transfer was for less than reasonably equivalent value when the debtor was insolvent. The evidence indicates that debtor was likely insolvent at the time of the foreclosure sale. Additionally, the foreclosure sale occurred within one year prior to the filing of the petition. The remaining issue then is whether reasonably equivalent value was received when the transfer occurred as a result of the foreclosure sale.

Defendants argue that for purposes of § 548 a foreclosure sale conducted in accordance with state law establishes as a matter of law that reasonably equivalent value was exchanged in connection with the transfer. To support their position, defendants point to *In re Verna*, 58 B.R. 246 (Bankr.C.D.Cal.1986), a case in which Judge Bufford stated that "[W]here a third party purchases property at a non-collusive regularly conducted foreclosure sale, the sale establishes the reasonably equivalent value required by Bankruptcy Code § 548." *Id.* at 252.

In response, debtor cites Judge Malugen's decision in *In re Lindsay*, 98 B.R. 983 (Bankr.S.D.Cal.1989). In *Lindsay*, Judge Malugen stated that "This Court concludes that the most balanced approach is one which will leave undisturbed the result of foreclosure sales that are procedurally proper, non-collusive and *conducted in a commercially reasonable manner.*" *Id.* at 991. (Emphasis added). Judge Malugen then described the inquiry that a court should conduct in making this determination. First, the court should inquire as to whether the sale was conducted properly in accordance with state law and was non-collusive and (2) if so, the court should then examine the totality of circumstances surrounding the sale to determine whether commercially reasonable steps were taken to achieve the best price at the foreclosure. *Id.*

In their opinions, Judges Bufford and Malugen do an excellent job of describing the history surrounding this issue. The three recognized approaches to the issue are represented by *Lawyers Title Insurance Corp. v. Madrid (In re Madrid)*, 21 B.R. 424 (9th Cir. BAP 1982) (hereinafter referred to as "Madrid (BAP)") (holding that a non-collusive and regularly conducted non-judicial foreclosure sale prior to the filing of a bankruptcy case cannot be challenged as a fraudulent conveyance because the consideration received establishes as a matter of law reasonably equivalent value); *Durrett v. Washington National Ins. Co.*, 621 F.2d 201 (5th Cir.1980) (holding that a transfer of property at a foreclosure sale for less than 70% of its fair market value is a fraudulent conveyance); and *First Federal Savings & Loan Association of Bismarck, Inc. v. Hulm (In re Hulm)*, 738 F.2d 323 (8th Cir.1984), *cert. denied*, 469 U.S. 990, 105 S.Ct. 398, 83 L.Ed.2d 331 (1984) (holding that a regularly conducted foreclosure sale does not automatically establish reasonably equivalent value and remanding the matter for an evidentiary determination of the issue).

In *Verna*, Judge Bufford indicates that Congress did not validate the *Madrid* (BAP) decision holding that a regularly conducted and non-collusive foreclosure

sale establishes the reasonably equivalent value of the property transferred. He, nevertheless, found that the reasoning of the *Madrid* (BAP) court was persuasive and, therefore, held accordingly. I, frankly, find the reasoning set forth by Judge Malugen in *Lindsay* to be preferable over the arbitrary view that under all circumstances a foreclosure sale conducted in accordance with state law establishes reasonably equivalent value.

■ Section 548 is a federal statutory provision that requires the application of federal law. It is axiomatic that federal courts look to state law for guidance when applying federal law. However, this does not mean that federal judges are compelled to follow blindly applicable state law. If this was the case, there would be no consistent body of federal law, but rather a compilation of the dictates of 50 states governing our decisions. This would be an intolerable situation. Therefore, just because a foreclosure sale is conducted in accordance with state law of a particular state should not dictate the finding of reasonably equivalent value under § 548. For example, in the proceeding before me, the sale was delayed 16 times in little over a year's period. Only those who were informed privately or saw the notice of sale in the newspaper had information regarding the sale. Under these circumstances, I think it is highly questionable that reasonably equivalent value was received for the Property. However, as a trial judge on this issue, I am not free to disregard the decision of the Bankruptcy Appellate Panel ("BAP") in *Madrid* (BAP) and follow Judge Malugen's lead in *Lindsay*. The doctrine of *stare decisis* controls my decision on this issue.

Black's Law Dictionary 1261 (5th ed. 1979) defines *stare decisis* as follows:

> Policy of courts to stand by precedent and not to disturb settled point.... Doctrine that, when court has once laid down a principle of law as applicable to a certain state of facts, it will adhere to that principle, and apply it to all future cases, where facts are substantially the same.... Under doctrine a deliberate or solemn decision of court made after argument on question of law fairly arising in the case, and necessary to its determination, is an authority, or binding precedent in the same court, or in other courts of equal or lower rank in subsequent cases where the very point is again in controversy.

(Citations omitted).

A leading treatise on federal practice describes the principle of *stare decisis* as:

> [S]uccessive decisions in the same court, but also decisions in courts owing an obedience to that court. In this context, the principle of conformity is more rigid. All other American courts, state and federal, owe obedience to the decisions of the Supreme Court of the United States on questions of federal law, and a judgment of the Supreme Court provides the rule to be followed in all such courts until the Supreme Court sees fit to reexamine. In like fashion, the district courts in a circuit owe obedience to a decision of the court of appeals in that circuit and must follow it until the court of appeals sees fit to overrule it. (footnotes omitted).

1B Moore's Federal Practice ¶ 0.402[1] (2 ed. 1987)

The Ninth Circuit addressed the issue of *stare decisis* in *Zuniga v. United Can Co.,* 812 F.2d 443, 450 (9th Cir.1987), when it stated that "District courts are, of course, bound by the law of their own circuit, and 'are not to resolve splits between circuits no matter how egregiously in error they may feel their own circuit to be.' *Hasbrouck v. Texaco, Inc.,* 663 F.2d 930, 933 (9th Cir.1981), cert. denied, 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982)."

The doctrine of *stare decisis* makes a decision on a point of law in one case binding precedent in future cases in the same court, and such courts owe obedience to the decision until such time as the effect of the decision is changed by a superior court or a court that rendered the decision. For example, the Bankruptcy Appellate Panel ("BAP") decided the key issue in *In re Ehring,* 91 B.R. 897 (9th Cir. BAP 1988) on the basis of *stare decisis*. The issue

before the court was when did the transfer of property occur under § 547 of the Bankruptcy Code. The BAP referred to the *Madrid v. Lawyers Title Ins. Corp. (In re Madrid)*, 725 F.2d 1197 (9th Cir.1984) ("Madrid (9th)") decision that under § 548 a transfer of real property occurs at the time the creditor's security interest is perfected as opposed to the time of the subsequent foreclosure sale. *Id.* at 1200–01. The BAP, therefore, felt compelled to apply the *Madrid* (9th) rationale to the § 547 transfer before it even though *Madrid* (9th) dealt with a transfer under § 548. The BAP recognized that in *Madrid* (9th) the court had stated that its holding was consistent with the treatment of similar transfers under § 547. 91 B.R. at 900. The BAP stated that it was "not free to disregard such a clear statement from the Ninth Ciruit on this issue." *Id.*

The BAP did this despite debtor's argument that the 1984 Amendments had the effect of nullifying the *Madrid* (9th) decision. In finding that the *Madrid* (9th) decision is still valid law with respect to the issue of transfer, the BAP stated that "Absent a clear mandate from Congress via either the wording of the 1984 Amendments of the legislative record, courts within in the Ninth Circuit are bound to continue to uphold the decision of *Madrid* regarding the time of transfer." *Id.* at 901.

■ The same rationale used by the BAP in *Ehring* applies to the issue of reasonably equivalent value under § 548. Congress did not address this issue in the 1984 Amendments. Therefore, absent a clear mandate from Congress to the contrary, I am bound to follow the Ninth Circuit law on the issue. The Ninth Circuit Court of Appeals in *Madrid* (9th) did not address the issue of reasonably equivalent value when it considered *Madrid* (BAP) on appeal. As previously indicated, the BAP had held in *Madrid* (BAP) that reasonably equivalent value is presumed when the property is transferred as a result of a non-collusive regularly held foreclosure sale. Since the Ninth Circuit did not address this issue on appeal, the view of the BAP with respect to this issue is the law in this circuit. If there is any question on this point, the BAP reinforced this view in *Ehring* when it addressed the debtor's argument challenging the adequacy of the foreclosure sale price and alleged windfall for the creditor from a subsequent sale of the foreclosed property. In addressing this argument, the BAP stated that "[W]e find no windfall where the property is sold at the lien value in a non-collusive regularly held foreclosure sale. See *In re Verna, supra,* 58 B.R. at 252; *Golden v. Tomiyasu,* 79 Nev. 503, 387 P.2d 989, 995 (1963)." 91 B.R. at 901. In other words, the BAP reaffirmed in *Ehring* its view that reasonably equivalent value is presumed to be received in a regularly conducted foreclosure sale.

Under the doctrine of *stare decisis*, this court is required to follow the BAP's holding on this issue even though I believe *Lindsay* is the better approach. As a trial judge, it is my job to apply the law of the Ninth Circuit. I am not free to roam for the law that appeals to me. Accordingly, the motion for preliminary injunction is denied and the temporary restraining order vacated effective upon entry of this order.

Separate findings of fact and conclusions of law with respect to this ruling are unnecessary. The within memorandum opinion shall constitute my findings of fact and conclusions of law.