In re SUNNYSIDE BEVERAGE,
INC., Debtor.

Augusta K. WAECHTER, Plaintiff,

v.

SUNNYSIDE BEVERAGE, INC. and St.
Joseph Bank & Trust Co., Defendants.

SUNNYSIDE BEVERAGE, INC.,
Cross–Plaintiff,

v.

ST. JOSEPH BANK & TRUST CO. and
Capital Credit Company,
Cross–Defendant.

Bankruptcy No. 86–30573.
Adv. Proc. No. 86–3072.

United States Bankruptcy Court,
N.D. Indiana,
South Bend Division.

Aug. 15, 1989.

David A. Rosenthal, Rosenthal, Greives & O'Bryan, Lafayette, Ind., for Sunnyside Beverage, Inc.

Chet Zawalich, Doran, Manion, Boynton, Kamm & Esmont, South Bend, Ind., for St. Joseph Bank & Trust Co.

## ORDER

ROBERT K. RODIBAUGH, Senior Bankruptcy Judge.

On November 24, 1986, Sunnyside Beverage, Inc. ("Sunnyside"), the debtor herein, filed its Cross Complaint against St. Joseph Bank & Trust Company ("St. Joseph Bank") and Capital Credit Company ("Capital"). The court held a trial on the Cross Complaint on January 21, 1988, and took the matter under advisement on April 11, 1988, following the time permitted for filing briefs.

### Background

On December 7, 1977, Augusta K. Waechter and Sunnyside entered into a real estate mortgage with St. Joseph Bank. In conjunction with the mortgage and in order to secure payment thereon, Augusta K. Waechter and Sunnyside executed a promissory note in the amount of $302,845.93 in favor of St. Joseph Bank. Thereafter, on July 20, 1978, Sunnyside entered into a Security Agreement whereby it granted St. Joseph Bank a security interest in: "All present and after acquired machinery, equipment, furniture, fixtures, and inventory" located on the mortgaged premises "and at any and all other locations owned, leased, rented, or occupied" by Sunnyside. Security Agreement (July 20, 1978). The Security Agreement stated that it secured Sunnyside's $520,000.00 indebtedness to St. Joseph Bank. *Id.* St. Joseph Bank filed a UCC Financing Statement with respect to the Security Agreement on January 13, 1978, and filed a continuation of the originally filed UCC Financing Statement on November 16, 1982.

On July 9, 1984, St. Joseph Bank, in its assumed business name of Capital, loaned an additional $150,000.00 to Sunnyside under a revolving promissory note. The parties executed a Security Agreement in conjunction with the note granting Capital a security interest in Sunnyside's inventory. Capital filed UCC Financing Statements with the Recorder's Office of St. Joseph County and the Secretary of State on July 10, 1984, and July 11, 1984, respectively, perfecting its interest in Sunnyside's inventory. Thereafter, on June 7, 1985, Sunnyside entered into a Contract to Purchase Business Assets ("Purchase Agreement") with Elkhart County Beverage, Inc. ("Elkhart Beverage") whereby Sunnyside agreed to sell, among other assets, its inventory to Elkhart Beverage for the sum of $136,500.00. The Purchase Agreement provided that the purchase price for the inventory was subject to credits for advances made by Richard C. Schafer pursuant to the directive of Sunnyside prior to the sale, including a $93,659.12 payment to Capital made on May 2, 1985, fully satisfying the debt of Sunnyside to St. Joseph Bank d/b/a Capital.

On June 11, 1985, Sunnyside filed its petition under Chapter 11 of the Bankruptcy Code. Augusta K. Waechter filed her Complaint for Determination of Interests in Property against Sunnyside and St. Joseph Bank on May 29, 1986, seeking to establish her fee simple ownership interest in the mortgaged real property. On November 24, 1986, Sunnyside filed its Cross Complaint against St. Joseph Bank. In its Cross Complaint Sunnyside claims that the $93,659.12 payment to Capital, which Sunnyside argues is an unsecured creditor of Sunnyside, was a preference under 11 U.S.C. § 547. Sunnyside asserts that the funds instead should have been paid to St.

Joseph Bank which holds a first secured interest in Sunnyside's inventory. Sunnyside accordingly asks the court to find that the payment to Capital was a preference and to require St. Joseph Bank to credit its real estate mortgage account in the amount of the payment.

St. Joseph Bank in turn argues that the $93,659.12 payment could not have been a preference in favor of Capital because a third party made the payment and because a payment to Capital was in effect a payment to St. Joseph Bank since Capital is a division of St. Joseph Bank and not a separate entity. St. Joseph Bank contends that it was not restricted in any manner in applying the $93,659.12 to Sunnyside's obligations as it was free to pick and choose available remedies in collecting its debts from Sunnyside under Ind.Code § 26–1–9–501. In addition, St. Joseph Bank contends that the $93,659.12 payment was not preferential because St. Joseph Bank is a fully secured creditor of Sunnyside which would have received complete satisfaction of its claim in a Chapter 7 liquidation. Accordingly, St. Joseph Bank asserts that Sunnyside should not prevail on its Cross Complaint.

St. Joseph Bank further argues that even if the court finds that St. Joseph Bank and Capital are separate entities, the payment to Capital does not fall within the provisions of 11 U.S.C. § 547 because St. Joseph Bank is fully secured pursuant to the mortgaged real property alone and over secured to the extent of its lien on Sunnyside's inventory. Hence, St. Joseph Bank argues that the payment to Capital was not preferential in that Capital too was fully secured with respect to Sunnyside's inventory and would have received complete payment in a Chapter 7 proceeding. St. Joseph Bank explains that pursuant to the marshalling doctrine as established by case law the senior lien holder in the inventory, in this case St. Joseph Bank, could have been required to satisfy its senior lien from its mortgage lien rather than pursuing its interest in the inventory in order to insure that the funds from the sale of the inventory would be available to the junior lien holder. St. Joseph Bank further contends

that Capital complied with the provisions of Ind.Code § 26–1–9–312(3) in advancing funds to Sunnyside thereby causing St. Joseph Bank's lien in the inventory to be subordinated to its own.

### Discussion and Decision

Title 11 U.S.C. § 547(b) provides in relevant part:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; ... and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title....

11 U.S.C. § 547(b) (Callaghan 1988). This section serves the dual purposes of protecting the debtor from creditors who may attempt to "rac[e] to the courthouse to dismember the debtor during his slide into bankruptcy" and facilitating equal distribution among the debtor's creditors. 4 Collier on Bankr. (MB) ¶ 547.01 (1988) (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. at 177–78 (1977), U.S.Code Cong. & Admin. News 1978, at pp. 5787, 6137–6139). Section 547(g) provides that the trustee (or debtor in possession) has the burden of proving it may avoid a transfer under subsection (b). 11 U.S.C. § 547(g) (Callaghan 1988).

■ Initially, the court will address St. Joseph Bank's argument that the payment in question is not a preference since it did

not come directly from Sunnyside. Title 11 U.S.C. § 101(50) states that a "transfer" includes "every mode, direct or *indirect,* absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property...." 11 U.S.C. 101(50) (Callaghan 1988) (emphasis added). This definition is to be construed broadly. H.R.Rep. No. 95–959, 95th Cong., 1st Sess. 314 (1977) and S.Rep. No. 95–989, 95th Cong., 2d Sess. 27 (1978). Hence, § 547 plainly includes the transfer from Sunnyside to Capital albeit Elkhart Beverage served as the conduit in making the payment for Sunnyside's benefit. *See Rajala v. Bowlus School Supply, Inc. (In re Kirk),* 38 B.R. 257, 259 (Bankr.D.Kan. 1984).

The arguments submitted by the parties indicate that the parties have no real dispute concerning the first four elements of § 547(b). The $93,659.12 payment from Elkhart Beverage on behalf of Sunnyside certainly benefitted Sunnyside's creditor, Capital. Moreover, the parties do not dispute that the purpose of the payment was to satisfy Sunnyside's indebtedness on the revolving promissory note which Sunnyside executed in favor of Capital in July of 1984. Elkhart Beverage made the payment on behalf of Sunnyside while Sunnyside was insolvent only four days before Sunnyside filed its petition. The question which remains before the court is whether the payment enabled Capital to receive more than it would have if Sunnyside's case were a case under Chapter 7, the transfer had not been made, and Capital received payment to the extent permitted by Title 11.

Generally, a debtor's payment to a fully secured creditor is not a preferential transfer under § 547(b) because upon receipt of the payment the creditor reduces his secured claim by the amount of the payment. *Gilbert v. Gem City Savings Assoc. (In re Hale),* 15 B.R. 565, 567 (Bankr.S.D.Ohio 1981). Hence, the secured creditor receives no more than it would in a Chapter 7 liquidation. In this case St. Joseph Bank submits that it is a fully secured creditor both with respect to its initial loan and security agreement with Sunnyside whereby it took a security interest in certain real estate and the debtor's inventory and with respect to its second extension of credit and security agreement under the assumed name of Capital whereby it took a security interest in the debtor's inventory.

St. Joseph Bank relies upon Ind. Code § 26–1–9–501(4) which gives a party holding a secured interest in both personal and real property the right to choose whether to proceed against the personal property or the real property in the event of the debtor's default. Ind.Code Ann. § 26–1–9–501(4) (Burns Supp.1988). While the debtor makes much of the fact that St. Joseph Bank and Capital operated as separate entities, the court finds St. Joseph Bank's argument to be convincing regardless of whether the court views St. Joseph Bank as a single secured creditor holding an interest in Sunnyside's inventory arising from two different security agreements or as an entity separate from Capital with a prior secured interest in Sunnyside's inventory. Reviewing the relevant law, the court is unable to find any provision in the Bankruptcy Code or case law which negates the effect of Ind.Code § 26–1–9–501(4) in the event of the debtor's bankruptcy. Moreover, the debtor has not presented any authority which prevents St. Joseph Bank from exercising its rights established by Ind.Code § 26–1–9–501(4). The court therefore finds that St. Joseph Bank has the option under Ind.Code § 26–1–9–501(4) to proceed against the real property which secures Sunnyside's indebtedness to it under the July 20, 1978, Security Agreement rather than proceeding against the debtor's inventory. As Sunnyside's indebtedness to St. Joseph Bank is fully secured with respect to the real property alone and St. Joseph Bank has elected to proceed against the real property, the court finds that the debt to Capital is fully secured. Sunnyside's $93,659.12 payment to Capital thus is not a preference under § 547(b) because it does not permit Capital to receive more than it would have in a Chapter 7 proceeding.

Alternatively, the court finds sufficient grounds for finding that no preference exists pursuant to Ind.Code § 26–1–9–312(3).

Ind.Code § 26–1–9–312(3) provides in relevant part:

A perfected purchase money security interest in inventory has priority over a conflicting security interest in the same inventory and also has priority in identifiable cash proceeds received on or before the delivery of the inventory to a buyer if:

(a) The purchase money security interest is perfected at the time the debtor receives possession of the inventory; and

(b) The purchase money secured party gives notification in writing to the holder of the conflicting security interest if the holder had filed a financing statement covering the same types of inventory ...; and

(c) The holder of the conflicting security interest receives the notification within five (5) years before the debtor receives possession of the inventory; and

(d) The notification states that the person given the notice has or expects to acquire a purchase money security interest in inventory of the debtor, describing such inventory by item or type.

Ind.Code Ann. § 26–1–9–312(3) (Burns Supp.1988). The purpose of this statute is to encourage and protect purchase money security interests. *National Bank & Trust Co. v. Moody Ford, Inc.,* 149 Ind. App. 479, 273 N.E.2d 757, 760 (1971). The court recognizes that Ind.Code § 26–1–9–312(3) ordinarily applies to conflicting security interests between different individuals or entities. In this case, however, the parties present the rather unique situation where one creditor holds two conflicting security interests. Pursuant to § 26–1–9–312(3) St. Joseph Bank argues that its second interest has priority over its first interest as the second interest qualifies as a perfected purchase money security interest within the meaning of the statute. Apparently, due to the fact that it holds both security interests, St. Joseph Bank does not attempt to establish the requirements for invoking the subsection which are contained in § 26–1–9–312(3)(a), (b), (c), and (d).

The court thus must consider whether a party with conflicting security interests in the same collateral must follow the requirements set forth in § 26–1–9–312(3) in order for its subsequent purchase money security interest to have priority over the interest which it perfected first in time. The question apparently is one of first impression in Indiana. The court is unable to think of any purpose which would be served by applying the requirements of Ind.Code § 26–1–9–312(3) to a creditor who holds two conflicting security interests in the same inventory. Rather, the court concludes, considering the purpose of Ind.Code § 26–1–9–312 which is to encourage and protect purchase money security interests, that a creditor holding a security interest in a debtor's inventory may be deemed to have notice of its own actions in obtaining a subsequent purchase money security interest in the same inventory. The court thus determines that as St. Joseph Bank and Capital are the same entity, as Capital properly perfected its interest in Sunnyside's inventory, and as notice of Capital's subsequent purchase money security interest in Sunnyside's inventory may be inferred to St. Joseph Bank, Capital's purchase money security interest is superior to St. Joseph Bank's first secured interest. Hence, the debtor's $93,659.12 payment to Capital was not a preferential transfer under § 547(b).

### Conclusion

WHEREFORE, the court, finding that Elkhart Beverage's $93,659.12 payment to Capital for the benefit of Sunnyside is not a preferential transfer within the meaning of § 547(b), now denies Sunnyside's Cross Complaint. It is

SO ORDERED.